[No. A014938. First Dist., Div. One. Nov. 7, 1983.]

SUSAN CREED, Plaintiff and Appellant, v.
HENRY A. SCHULTZ, Defendant and Respondent.

COUNSEL

George Deukmejian and John Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Thomas A. Brady, Herbert F. Wilkinson, Ronald E. Niver, Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Appellant.

Jack F. Bonanno and Keil, Connolly & Barbieri for Defendant and Respondent.

OPINION

**ELKINGTON, J.**—This appeal is taken by plaintiff Susan Creed (formerly Susan Schultz) from an "order for support pursuant to hearing under revised

Uniform Reciprocal Enforcement Support Act," of the San Francisco Superior Court, filed April 28, 1981, in its action numbered DA 8693. In the interest of justice and of minor children who are concerned we treat the appeal, as was obviously intended, as also from the court's contemporaneous orders in its action numbered 771936, in which Henry Schultz (hereafter Henry) was plaintiff and Susan Creed (hereafter Susan) was defendant. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 336, pp. 4313-4315; *In re Edgar M.* (1975) 14 Cal.3d 727, 740 [124 Cal.Rptr. 745, 541 P.2d 289].)

We relate, as best we can, the confusing relevant factual-procedural context of the parties' strife and of the two actions.

Henry and Susan were in 1973, the married parents of three children, Eric, aged six, Dianna, aged four, and Barrett, aged two. On November 26, 1973, their marriage was dissolved by a default judgment of the Court of Common Pleas of the State of Ohio. Henry was ordered to pay Susan as support for the children the sum of $25 per week, per child. Custody of the children was awarded to Susan, and reasonable visitation rights, agreed upon by the parties, were granted to Henry as follows:

"The Husband shall have the right of visitation with the minor children of the parties *at a place of his choosing,* away from the home of the Wife, from 1:00 p.m. until 6:00 p.m. on each Sunday. In addition thereto the Husband shall have the right of visitation with the children for two (2) full weeks during the summer *at any place of his choosing, at a date to be determined between the parties,* from Friday at 6:00 p.m. until two (2) weeks hence, *and at all other times agreed upon between the parties,* plus one weekend per month from Friday 12:00 noon to Sunday, 6:00 p.m." (Our italics.)

(It will be seen that much of the details of Henry's visitation rights were left to Henry's choosing or to the future expected agreement of the parties.)

But the adjudged and agreed reasonable visitation rights soon became incapable of implementation, or enforcement; Susan removed her residence and that of the children to Texas, where she remarried, and Henry moved to California. At some time thereafter, apparently also by agreement, Henry acquired the actual custody of the oldest child, Eric, and was relieved of further support payments to Susan for him. But as to the younger children Henry complained, as later by clear implication found true by the California superior court, that Susan had "thwarted every effort of [Henry] to communicate with his children by telephone or otherwise and has further willfully and deliberately interfered with and prevented the exercise by Henry of the rights of visitation given to him under the Ohio judgment." Because

of this, or for some other reason, Henry withheld support payments for the two children in Susan's custody.

The next relevant record indication was the filing by Susan, then living in Texas, of a petition under the Uniform Reciprocal Enforcement of Support Act for claimed current and delinquent child support. The petition was forwarded to the District Attorney of San Francisco, California, where Henry lived with Eric, for processing. Henry's response to the petition was that such sums as were otherwise delinquent for child support had been liquidated by an accord and satisfaction agreed upon by Susan, and further, that Susan had persistently and unlawfully denied him the reasonable visitation rights ordered by the Ohio court, with Dianna and Barrett.

While that matter was pending *in consideratione legis*, Henry commenced in San Francisco, a California action, September 30, 1980, numbered 771936, against Susan.

The action numbered 771936 was brought, "to *establish Ohio judgment of divorce*, for modification of judgment, as established, as to custody of minor child and as to child support for children of the marriage, for award of attorney's fees and costs, and for consolidation with hearing for enforcement of support under revised Uniform Reciprocal Enforcement of Support Act." (Our italics.) Among other things, Henry sought thereby support from Susan for Eric, and that "all further child support payments by [Henry] to [Susan] be suspended until [Susan] again complies with and ceases interference with the visitation rights given to [Henry] under the aforesaid Ohio judgment. . . ."

Summons in the action numbered 771936 to "establish Ohio judgment" appears not to have been served, at least regularly, upon Susan in Texas but she nevertheless retained California counsel to represent her therein. Soon Susan served upon Henry, in that action, a "Notice of Taking Deposition of Henry Schultz and for Production of Documents," as permitted by Code of Civil Procedure sections 2016 and 2031. The record does not indicate whether the deposition was taken, or the many demanded documents produced.

In the action numbered DA 8693 Susan was represented by the district attorney; in action numbered 771936, as noted, she was represented by her retained counsel. The two actions, *although not consolidated*, came on for a simultaneous trial on February 5, 1981, about three weeks after the above-described notice to Henry.

Prior to the trial Susan had, in action numbered 771936, served upon Henry her "Notice of Motion to Quash Service of Summons and of Order

to Show Cause, or to Dismiss on Ground of Inconvenient Forum." The motion had been set for hearing at the date and hour of the trial's setting.

At the trial's commencement, Susan's attorney announced that he was appearing *"specially"* for Susan "under the civil action [numbered 771936], your Honor, in contrast to the URESA action" numbered DA 8693, in which she was represented by the district attorney. "And [he stated,] my objection is that this court doesn't have jurisdiction to determine anything concerning the visitation of those two Texas children under the Uniform Act."

The trial court asked whether Susan had not *generally* appeared by "participation in the discovery proceedings." Answering negatively, counsel "pointed out to the court, [that] which I think is determinative and crucial, . . . the notice of deposition has never *been filed with the court.*" (Our italics.)

After further argument on the point the trial court ruled: "[T]he motion to quash is denied except with regard to anything involving the custody of Barrett and Dianna, and is granted as to those two on the basis—as to that issue on the basis that we have no jurisdiction over their custody under the Uniform Child Custody Jurisdiction Act."

Thereupon, expressly insisting that she had not appeared generally in the action numbered 771936, Susan and her retained attorney participated no longer in the proceedings of that action.

Following trial of the two actions, an order was entered in the Uniform Reciprocal Enforcement of Support Act action numbered DA 8693 (in which Susan had been represented throughout by the district attorney) which, as here relevant, provided:

"Effective October 1, 1980, respondent's obligation of child support under the Ohio judgment is modified to provide that respondent shall pay to petitioner the sum of $50.00 per month per child for the support of the two minor children Dianna Lee Schultz and Barrett Oliver Schultz subject to the proviso that, pending the arrival of the aforesaid two children for their summer visit with respondent as provided for in the Temporary Order filed in action number 771936, said amount of $50.00 per month for each of the two children shall be paid by the respondent to his attorney, Jack F. Bonanno, Esq., to be placed in the trust account of said Jack Bonanno. Upon the arrival of the aforesaid two children for their summer visit with respondent father in the summer of 1981, Mr. Bonanno shall forthwith then transmit said child support funds to the Family Support Bureau of the San Fran-

cisco District Attorney's Office for transmission to the petitioner. The amounts payable by respondent to Mr. Bonanno in trust shall be reduced by any child support payments made by respondent to petitioner on or after October 1, 1980, to the time of the hearing in this case on February 5, 1981. In the event that the aforesaid children, Dianna Lee Schultz and Barrett Oliver Schultz, do not arrive at the home or other designated place of the respondent for the six weeks' or other mutually agreed upon summer visitation rights for 1981, then the amount paid in by respondent to Jack F. Bonanno as trustee shall be subject to further disposition by this court, retroactive to October 1, 1980.

"The issue of the accrued arrearage of child support ordered under the Ohio Judgment of Divorce, dated March 26, 1973, shall be reserved pending further hearing."

As to the action numbered 771936, following the trial court's order denying Susan's motion to quash and dismiss, the court entered its "Temporary Order re Custody, Visitation, and Child Support" which, as here relevant, substantially iterated the above-noted order entered in action numbered DA 8693.

On her appeal Susan first contends that, having appeared *"specially"* only in Henry's action numbered 771936, the California court had acquired no *"personal"* jurisdiction over her as to that action.

We disagree.

The instant issue may be narrowed to the question whether Susan's *served* "Notice of Taking Deposition of Henry Schultz and for Production of Documents" in action numbered 771936, *without its subsequent filing*, constituted a *general appearance* in that action.

We first observe that Code of Civil Procedure section 2016, under which Henry's deposition was sought to be taken, provided that such a deposition "may be taken in an action at any time after the service of the summons . . . *or after the appearance of the defendant. . . .*" (Italics added.)

It is also noted that Code of Civil Procedure section 1014, providing that "[a] defendant appears in an action when he answers, demurs, files a notice of motion to strike, files a notice of motion to transfer . . ., gives the plaintiff written notice of his appearance, or when an attorney gives notice of appearance for him" is *not* exclusive. (See *General Ins. Co.* v. *Superior Court* (1975) 15 Cal.3d 449, 453 [124 Cal.Rptr. 745, 541 P.2d 289]; *Davenport* v. *Superior Court* (1920) 183 Cal. 506, 511 [191 P. 911];

*Brown* v. *Douglas Aircraft Co.* (1958) 166 Cal.App.2d 232, 239 [333 P.2d 59].)

██ Instead: "A general appearance is not necessarily a formal, technical step or act. The term is applied to various acts which, under established principles of procedure, are deemed to confer jurisdiction of the person. The underlying theory is that a defendant makes a general appearance when he *takes any part in the action or proceeding,* . . ." (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 118, pp. 646-647; italics in original.)
██ " ' " ' "A "general appearance" must be express or arise by implication from the defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff, other than one contesting the jurisdiction only.' " ' " ' " (*Botsford* v. *Pascoe* (1979) 94 Cal.App.3d 62, 67 [156 Cal.Rptr. 177]; *RCA Corp.* v. *Superior Court* (1975) 47 Cal.App.3d 1007, 1009 [121 Cal.Rptr. 441].) It will be established where a party in some manner recognizes " 'the authority of the court to proceed in the action' " (*Estate of Strong* (1942) 54 Cal.App.2d 604, 611 [129 P.2d 493]); or "takes any . . . step which is part of the regular proceeding in the case . . . upon the hypothesis only that the court had jurisdiction of his person" (*Bank of America* v. *Carr* (1956) 138 Cal.App.2d 727, 733 [292 P.2d 587]). ██ "An act of a defendant . . . which may reasonably be construed to imply that the court has, in [the] action, acquired jurisdiction of the person of the defendant, will be equivalent to an appearance, . . ." (*Davenport* v. *Superior Court, supra,* 183 Cal. 506, 511.) And: "As a rule one cannot avail himself of the advantage of being a party and escape the responsibilities." (*In re Clarke* (1899) 125 Cal. 388, 392 [58 P. 22].)

██ And if a party participates in any matter "which itself would be a regular proceeding in the case, it is a general appearance regardless of how adroitly, carefully or directly the appearance may be denominated or characterized as special." (*Brown* v. *Douglas Aircraft Co., supra,* 166 Cal.App.2d 232, 238; and see *Security etc. Co.* v. *Boston etc. Co.* (1899) 126 Cal. 418, 423 [58 P. 941]; *Slaybaugh* v. *Superior Court* (1977) 70 Cal.App.3d 216, 222 [138 Cal.Rptr. 628].)

██ Here the trial court expressly concluded that Susan had made a general appearance in the action numbered 771936, by "using the court's processes to initiate discovery proceedings, whether [she] filed it or not." Under the above-noted authority, we discern no error.

██ Another contention of Susan's appeal is that the superior court erred in conditioning child support on visitation rights.

It will be noted that the trial court, by reason of changed circumstances, had reduced the amount of support for the children remaining in Texas from $25 per week to $50 per month for each child.

On her instant contention, Susan's reliance is upon Code of Civil Procedure section 1694, which is part of the Uniform Reciprocal Enforcement of Support Act under which action numbered DA 8693 was brought. The relied upon portion of section 1694 states: "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court."

But section 1694 also states: "If the action is based on a support order issued by another court, . . . the duty of support, [shall be] subject only to any defenses or modification available to a defendant in a proceeding to enforce a foreign support judgment." We interpret this language as an affirmation of the rule of *Worthley* v. *Worthley,* (1955) 44 Cal.2d 465, 472-474 [283 P.2d 19]. That case holds that in actions, as here, under the Uniform Reciprocal Enforcement of Support Act, California's courts must recognize and support judgments of sister states. If such judgments are modifiable prospectively in the sister state of their entry, they will be so modifiable in California. (And see *Hopkins* v. *Hopkins* (1956) 46 Cal.2d 313, 316 [294 P.2d 1]; *In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 520-521 [160 Cal.Rptr. 379]; *McDowell* v. *Orsini* (1976) 54 Cal.App.3d 951, 968 [127 Cal.Rptr. 285]; *Trippe* v. *Trippe* (1975) 53 Cal.App.3d 982, 986-987 [126 Cal.Rptr. 214]; *Farmers & Merchants Trust Co.* v. *Madeira* (1968) 261 Cal.App.2d 503, 507-508 [68 Cal.Rptr. 184]; *Leverett* v. *Superior Court* (1963) 222 Cal.App.2d 126, 129-130 [34 Cal.Rptr. 784]; *Herczog* v. *Herczog* (1960) 186 Cal.App.2d 318, 323-324 [9 Cal.Rptr. 5]; *Engle* v. *Superior Court* (1956) 140 Cal.App.2d 71, 78-79 [140 Cal.Rptr. 71].)

And the issue of such a modification will be determined *according to the law of the sister state where the judgment was entered.* (*Sutton* v. *Leib* (1952) 342 U.S. 402, 406, 409 [96 L.Ed. 448, 454, 456, 72 S.Ct. 398]; *Lewis* v. *Lewis* (1957) 49 Cal.2d 389, 394 [317 P.2d 987]; *Worthley* v. *Worthley, supra,* 44 Cal.2d 465, 468; *Comstock* v. *Comstock* (1981) 116 Cal.App.3d 481, 485-486 [172 Cal.Rptr. 148]; *Petersen* v. *Petersen* (1972) 24 Cal.App.3d 201, 205 [100 Cal.Rptr. 822].) Judicial notice may be taken of such laws. (Evid. Code, § 452, subd. (c); Witkin, Cal. Evidence (2d ed. 1966) Judicial Notice, § 167, pp. 153-154.)

We take judicial notice that throughout the times with which we are here concerned, the State of Ohio's law provided:

"The [trial] court may make any just and reasonable order or decree permitting any parent who is deprived of the care, custody, and control of the children to visit them at the time and under the conditions that the court directs. *The court may, upon notice and hearing, make any modification that it determines just in an order of support of a child or an award of alimony upon proof that the party subject to the order has been continuously or repeatedly prevented from exercising a right to visit the child established by an order of court.*" (Tit. 31, Ohio Rev. Code, § 3109.05(B); italics added.)

The instant contention also, is accordingly found invalid.

And since, as has been noted, the issue of accrued child support arrearages was reserved by the superior court "pending further hearing," that issue is not before us.

■ Yet another contention of Susan is that the superior court had no jurisdiction of the subject matter of visitation rights with the children residing in Texas.

The trial court had, as noted, expressly refrained from abridging, or interfering with, the *"custody"* of the Texas children, concluding that under the Uniform Child Custody Jurisdiction Act (Civ. Code, §§ 5150-5174), such jurisdiction was properly reposed elsewhere. Susan correctly points out that under that uniform act, a state's *"custody determination"* includes *"visitation rights"* with one's children. (Civ. Code, § 5151, subd. (2).)

But we are of the opinion that the superior court did *not* in any way abridge the *reasonable* visitation rights, agreed upon by the parties and ordered by the Ohio court. Instead it gave effect to, and enforced, such visitation rights which through changed circumstances could no longer be effectuated as they were initially prescribed.

And we observe, that under the Uniform Child Custody Jurisdiction Act (Civ. Code, § 5150, subd. (g)), California's courts are under a duty to "facilitate the *enforcement* of custody decrees of other states." (Our italics.)

Again we find no merit in Susan's contention.

The views we have expressed render inapposite authorities relied upon by Susan; other of the arguments of the parties having, because of the views we have expressed, become moot, we do not attempt to resolve them.

The orders entered in actions DA 8693 and 771936 are, and each of them is, affirmed.

Racanelli, P. J., and Holmdahl, J., concurred.

A petition for a rehearing was denied December 1, 1983, and appellant's petition for a hearing by the Supreme Court was denied January 25, 1984.