[Civ. No. 7389. Fifth Dist. Apr. 18, 1984.]

In re the Marriage of LINDA SUSAN and CHARLES LEE RYALL.
LINDA SUSAN RYALL, Appellant, v.
CHARLES LEE RYALL, Respondent.

## COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Appellant.

Vizzard, Baker, Sullivan & McFarland and Peggy S. Fuller for Respondent.

## OPINION

**HANSON (P. D.), J.**—In this appeal from a judgment entered in an action brought under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) in Kern County Superior Court, the sole question presented is whether the trial court had jurisdiction to make orders concerning visitation and a tax deduction in a RURESA proceeding.

### FACTS

Linda Susan and Charles Ryall were married in Florida. Two children were born to the marriage and the parties were divorced. Included in the Florida dissolution order was a property settlement agreement and an agreement concerning custody of the children. The dissolution order specified the following:

"CUSTODY OF CHILDREN: The custody of the minor children of the parties shall be with the wife, subject to the right of *reasonable visitation* by the husband, visitation privileges to be determined by the parents. The parties shall use all reasonable efforts to maintain free access to the children of the parties, and to create a feeling of affection between themselves and the children. Neither shall do anything to hamper this natural development of the children's lives and respect for the other party.

"· · · · · · · · · · · · · · · · · · · · · · · · · ·

"CHILD SUPPORT: The husband shall pay to the wife for the support and maintenance of the minor children of the parties the sum of $22.50 per week per child, making a total sum of $45.00 per week, said payments to continue until each child reaches the age of 18 years, marries or other emancipation, whichever occurs first." (Italics added.)

The clerk of the Circuit Court of Orange County, Florida, transmitted wife's petition under RURESA to Kern County where the petition was filed. Wife submitted written testimony to the court, alleging that child support payments were in arrears in the amount of $482 as of October 1981, and that husband had made no child support payments since August 1981.

After the Kern County Superior Court issued an order to show cause, husband retained counsel and filed a responsive declaration claiming that he had been deprived of visitation and requesting specific visitation rights during the summer, with a concomitant suspension of child support payments during such times. Husband also alleged that he was entitled to claim the children as dependents for income tax purposes and requested the court to make such a finding.

At the RURESA hearing in Kern County, the district attorney, representing the wife, argued that the court did not have jurisdiction to make an order regarding visitation. Husband argued that wife had submitted herself to the jurisdiction of the court, and it was necessary for the court to make a specific visitation order because of wife's threats to withhold visitation rights until such time as child support was increased.

Husband testified that he had custody of the children at various times since the divorce, usually during the summer months, and had an oral agreement with wife that he was not required to pay child support for periods of time the children were living with him. Husband stated he had paid child support for the times the children resided with him, resulting in overpayments.

The court's order in pertinent part stated: "IT IS HEREBY ORDERED that child support for the two minor children of the parties shall be increased to the sum of $30.00 per week per child, for a total aggregate amount of $60.00 per week, subject to the hereinafter stated provisions.

" . . . . . . . . . . . . . . . . . . " . . . . . .

"IT IS FURTHER ORDERED that henceforth, whenever the children are in the physical custody of the respondent, child support shall forthwith and immediately cease and not be required to be paid during the period the children are with the respondent.

"IT IS FURTHER ORDERED that as a *condition* of the child support it is determined that respondent is contributing at least 51% to the support of said minor children, and respondent shall be entitled to claim said minor children for State and Federal Income Tax deduction purposes.

"IT IS FURTHER ORDERED that the children shall be in the physical custody of the respondent commencing June 13, 1982, and through the balance of the summer until just prior to the start of the school year in Florida, and the costs and expenses of bringing the children from Florida to Bakersfield and returning the children to Florida shall be at the sole cost and expense of the respondent herein." (Italics added.)

### DISCUSSION

### *Visitation*

In 1951, California adopted the Uniform Reciprocal Enforcement of Support Act codified in Code of Civil Procedure sections 1650 through 1699.[1] In 1968 the Revised Act (hereinafter RURESA or Act) was adopted.[2] Section 1652 states that the purpose of the Act is to obtain the reciprocal and uniform enforcement of duties of support. ▮ The *single* issue to be resolved under the Act " 'is the question of entitlement of dependents to support by one legally liable to support them.' " (*McDowell* v. *Orsini* (1976) 54 Cal.App.3d 951, 963 [127 Cal.Rptr. 285]; *Clark* v. *Clark* (1966) 246 Cal.App.2d 619, 622 [54 Cal.Rptr. 875].) The Act cannot create new support obligations, because its sole purpose is to enforce existing duties of support. (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 659 [165 Cal.Rptr. 877, 612 P.2d 967].)

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise provided.

[2] The 1968 revision of the Uniform Reciprocal Enforcement of Support Act added the new proviso to the effect that the determination or enforcement of a duty of support owed to one obligee would be unaffected by any interference by another obligee with rights of custody or visitation granted by a court. (U. Reciprocal Enforcement of Support Act (1968) 9A U. Laws Ann. § 23, p. 711; 23 Am.Jur.2d, Desertion and Nonsupport, § 137, p. 987.)

Wife presents three related arguments: (1) the trial court's action in granting visitation rights violated the intended scope of RURESA, which is limited to the enforcement of past and present support obligations previously established in a foreign court; (2) the Legislature specifically prohibited the exercise of jurisdiction over matters concerning visitation in a RURESA action when it adopted section 1694; and (3) the language of the case law in California makes it clear that a court hearing a RURESA petition is not a forum for litigating disputes involving interference with custody or visitation rights or other obligations not affecting the duty of support.[3] Wife is correct on all contentions.

The scope of RURESA is limited to the enforcement of past and present support obligations previously established in a foreign court. Section 1672 provides: "All duties of support, including the duty to pay arrearages, are enforceable" under the Act.[4] Conspicuously absent from the language of the Act is any grant of authority to a trial court hearing a RURESA petition to settle matters of visitation. Section 1690 specifies that: "Participation in any proceeding under this title does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding," and section 1694 specifically provides that the support order issued by another court is "subject only to any defenses or modification available to a defendant in a proceeding to enforce a foreign support judgment." Matters concerning custody or visitation are not to be considered a defense to a duty of support: "The determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with rights of custody or visitation granted by a court." (§ 1694.)

The limited scope of RURESA proceedings is recognized by case law of both the Supreme Court and appellate courts of California. The Supreme Court in *Moffat* interpreted the last sentence of section 1694 to mean that

---

[3]The order concerning visitation rights is not moot even though the time period in which custody was ordered, December of 1982, has passed. The situation is "'capable of repetition, yet evading review'" (*DeFunis* v. *Odegaard* (1974) 416 U.S. 312, 318-319 [40 L.Ed.2d 164, 170, 94 S.Ct. 1704]) and the issue is one of great public interest (*DeRonde* v. *Regents of the University of California* (1981) 28 Cal.3d 875, 879-880 [172 Cal.Rptr. 677, 625 P.2d 220]; *Gordon* v. *Justice Court* (1974) 12 Cal.3d 323, 326. fn. 1 [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551]).

[4]"Duty of support" is defined as "a duty . . . whether imposed or imposable by law or by order, decree, or judgment of any court whether interlocutory or final or whether incidental to a proceeding for dissolution of marriage, judgment of nullity, or for legal separation, or to an action for divorce, separation, separate maintenance, or otherwise and includes the duty to pay arrearages of support past due and unpaid." (§ 1653, subd. (b).) "Support order" is defined as "any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered." (§ 1653, subd. (k).)

interference with visitation rights may not be asserted as a defense to a RURESA petition. (See *Moffat v. Moffat, supra,* 27 Cal.3d 645, 651-652.)

In *Moffat,* a former wife's petition under RURESA, filed with the district court in Virginia, was forwarded to California for processing. The court commissioner in California determined that the former wife, who for at least two preceding years deliberately had refused the father his visitation rights and had been and presently was held in contempt of a prior visitation order entered in California, was not estopped from seeking child support under the Act.

Although the Supreme Court reversed on the grounds that the prior contempt citation was res judicata and could not be collaterally attacked in the subsequent RURESA hearing, the court in no uncertain terms stated that "the intendment of section 1694 is that RURESA provides no forum for litigating disputes over interference with custody and visitation rights." (*Moffat v. Moffat, supra,* 27 Cal.3d 645, 651-652.) The court reasoned there was no way to avoid the plain meaning of section 1694.

The California Supreme Court recognized in the *Moffat* case that although operation of the reciprocal law could, in some instances, facilitate a custodial parent's impairment of the noncustodial parent's visitation rights, this risk is inherent in a law with the primary purpose of assuring the continued care and sustenance of the child. (*Moffat, supra,* 27 Cal.3d at p. 651; *In re Marriage of Ciganovich* (1976) 61 Cal.App.3d 289, 293 [132 Cal.Rptr. 261]; *McDowell v. Orsini, supra,* 54 Cal.App.3d 951, 964-968.) The court concluded that the noncustodial parent was not without a remedy because he or she could seek enforcement of the custody order, judgment or decree in the rendering court. (*Moffat, supra,* 27 Cal.3d at p. 652.)[5]

Wife also cites *McDowell v. Orsini, supra,* 54 Cal.App.3d 951 as additional support for her interpretation of section 1694. In *McDowell,* the mother, a resident of New York, brought a petition in the Superior Court of Los Angeles County to require the respondent father to uphold his obligation to support their child. A court order was issued requiring the father to pay monthly child support, but he did not comply with the order and an order to show cause re: contempt was issued. During the contempt hearing,

---

[5]Civil Code section 4380 specifically provides that a judgment, order, or decree of a court concerning a matter of custody is enforceable by "execution, the appointment of a receiver, contempt," or by orders the court deems necessary.

the father represented to the court that the mother was interfering with his "rights of reasonable visitation." The mother and child then moved to Pennsylvania, and a new order under RURESA was sent to the Los Angeles County Superior Court. In the second RURESA proceeding, the court ordered counsel for the father to prepare an order for child visitation and support which order was served upon the district attorney's office with a request for approval. A hearing was held and the court ordered that the father be given "the right of reasonable visitation with the minor," the right of reasonable visitation to include specific time periods for visitation during the summer months. The court also conditioned the payment of child support on the realization of the father's visitation rights.

The *McDowell* court held that the trial court's order purporting to deal with the matter of the custody of the minor child was beyond the power of the court because "(a) it was made without any written application . . . or other advance notice to petitioner that [this] relief was sought, (b) there were no circumstances justifying the exercise of jurisdiction over the child who neither resided in nor was present in California, and (c) the purpose of the proceeding was limited to enforcing the duty of support arising under the laws of this state against an obligor present in this state. (Code Civ. Proc., § 1655.)" (*McDowell* v. *Orsini, supra,* 54 Cal.App.3d at p. 961.)

The *McDowell* court first determined that the interest of the parent in the " 'companionship, care, custody, and management of . . . children [was] a compelling one' " necessitating the application of procedural due process rights of notice and opportunity to be heard to an interference with the interest. (*Id.,* at p. 961, quoting *Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208]; *In re Moilanen* (1951) 104 Cal.App.2d 835, 842 [233 P.2d 91].) The court further stated that the requirement is made explicit by the provisions of the Uniform Child Custody Jurisdiction Act which provide that a court in California, competent to decide child custody matters, must afford notice and an opportunity to be heard concerning the matter of child custody to any out-of-state parent whose parental rights have not terminated. (Civ. Code, § 5154; *McDowell, supra,* 54 Cal.App.3d at pp. 961-962.)

Although the father in the *McDowell* case, in his response to the order to show cause, asserted that he would raise the question of visitation rights in the subsequent hearing on the order, this responsive pleading did not meet the notice requirements of Civil Code section 5154 which called for personal service on the out-of-state spouse. Notice is not required if the party submits to the jurisdiction of the court, but the mother's application for support pursuant to RURESA does not constitute a submission to the juris-

diction of the California courts with respect to the matter of custody. (§ 1690; *McDowell, supra,* 54 Cal.App.3d at p. 963.)

Even if the notice requirements were met, the *McDowell* court alternatively held that the exercise of jurisdiction over the custody of a minor child would not be permissible in a RURESA action unless the jurisdictional requirements of Civil Code section 5152 were established. (54 Cal.App.3d at pp. 962-963.) Civil Code section 5152 specifies the following situations in which the exercise of jurisdiction over the matter of child custody is proper: (a) if California is the child's "home state," (b) if the child and at least one contestant have a "significant connection with this state, and . . . there is available in this state substantial evidence" concerning the rearing of the child, (c) in an emergency and the child is present in the state, or (d) no other state has or will assume jurisdiction, and it is in the best interests of the child that California do so. In *McDowell,* as in the instant case, there was nothing in the record to indicate the circumstances enumerated in Civil Code section 5152 were met.

Additionally, it is clear that the California Legislature did not intend to extend jurisdiction in a RURESA proceeding beyond the matter of child support. In *McDowell,* the court stated: "Petitioner's application for support pursuant to the Uniform Reciprocal Enforcement of Support Act did not constitute a submission to the jurisdiction of the California courts with respect to the matter of custody. This is made clear by the provisions of section 1690 of the Code of Civil Procedure which provides: 'Participation in any proceeding under this title does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding.' " (54 Cal.App.3d at p. 963.)

■ It is not the rights of the parents the Legislature has sought to protect in adopting legislation designed to compel enforcement of support orders rendered in foreign states, but the right of the child to continued support. (See *McDowell, supra,* 54 Cal.App.3d at p. 965; *In re Marriage of Ciganovich, supra,* 61 Cal.App.3d 289, 294; *McNabb* v. *McNabb* (1941) 47 Cal.App.2d 623, 625-626 [118 Cal.Rptr. 869].) Furthermore, the policy of this state embodied in the provisions of RURESA and in the decisions of the appellate courts favors the rigorous enforcement of the child support obligation. (*McDowell, supra,* at p. 964.)

■ RURESA is a remedial statute and should be liberally construed with reference to the object to be obtained; every endeavor should be made to render the Act operable. (*McDowell, supra,* 54 Cal.App.3d at p. 966; *Estate of Filtzer* (1949) 33 Cal.2d 776, 783 [205 P.2d 377].) If the courts of California entertain matters concerning visitation rights in RURESA proceedings, the willingness of out-of-state spouses to file petitions here for

enforcement of child support obligations will be diminished. The California Supreme Court has refused to participate in the undoing of the purpose of the Act.[6] (*Moffat* v. *Moffat, supra,* 27 Cal.3d at pp. 651-652; see 23 Am.Jur.2d, Desertion and Nonsupport, § 128, pp. 978-979, and fn. 76.)

We reject all three arguments presented by husband in support of his position that the trial court did not exceed its jurisdictional bounds in specifying visitation rights for husband in the RURESA proceeding.

Husband initially asserts that the final sentence in section 1694, which provides that the "determination or enforcement of a duty of support owed to one obligee is unaffected by any interference by another obligee with the right of custody or visitation granted by a court" was enacted solely because of legislative concern "that an obliger [*sic*] would attempt to prevent a state or political subdivision from collecting or enforcing a duty of support owed to it based on welfare or other benefits received by the obligee, by raising the defense" of interference with the obligor's rights of visitation.[7] This interpretation is not supported by any authority. An obligee is defined in section 1653, subdivision (f), as: "a *person* including a state or political subdivision to whom a duty of support is owed or a *person* including a state or political subdivision that has commenced a proceeding for enforcement

---

[6]Accord *Leland* v. *Fricke* (Fla.App. 1979) 376 So.2d 432, 433 (under Florida law it is clear that "in a URESA proceeding the only matter susceptible to adjudication is the duty of support."); *People* ex rel. *Winger* v. *Young* (1979) 78 Ill.App.3d 512 [397 N.E.2d 253, 254] (Illinois appellate court reversed a trial court order allowing the court clerk to withhold transmission of child support payments until visitation rights were granted. The court stated "[t]he proper remedy for the violation of visitation rights was a petition for a rule to show cause why the non-complying party should not be held in contempt. The duty to permit visitation is completely independent of the duty to make support payments. [Citations.] To hold otherwise would be to punish the child for the misconduct of the custodial parent."); *Kline* v. *Kline* (1976) 260 Ark. 550 [542 S.W.2d 499, 500]; *Watson* v. *Dreadin* (D.C. App. 1973) 309 A.2d 493, 496 cert. den. 415 U.S. 959 [39 L.Ed.2d 574, 94 S.Ct. 1488] (District of Columbia Court of Appeal held that it had no jurisdiction over the custody issue in its role as a responding court in a RURESA proceeding deciding in accordance with Florida law from which the petition originated. Expounding on the Florida courts' reasoning, the *Watson* court stated that the declared purpose of the act, which was to "expedite the obligee's effort and reduce expenses," would be thwarted if the obligee were required to litigate a custody question in a foreign jurisdiction especially in light of the limited nature of the proceeding); *Myers* v. *Young* (1981) 285 Pa.Super. 254 [427 A.2d 209, 212] (duty of support "does not depend upon satisfactory visitation arrangements. Even assuming that a mother improperly has removed the children from their father's home to another state, her misconduct in doing so cannot destroy the right of the children to be supported by their father.").

[7]Husband's interpretation of this section is totally unacceptable. He urges that because the term "another obligee" is used, instead of "said obligee," the second obligee *must* refer to a public entity such as a welfare department. This construction would result in different rules for children receiving public assistance and those supported by family income. A clearer and more reasonable interpretation is that "the determination or enforcement of a duty to support owed to the obligee [such as a child] is unaffected by any interference by another obligee [such as a parent *or* public agency]."

of an alleged duty of support." (Italics added.) The interpretation of this section by the Supreme Court in *Moffat* to preclude litigation of disputes over interference with custody and visitation rights in a RURESA proceeding is consistent with the underlying purpose of the Act. Had the Legislature intended husband's interpretation of the section, it could have substituted the words "political subdivision" for "obligee"; the argument is specious.

Husband's second argument, an attempt to distinguish the *McDowell* and *Moffat* cases from the present case, also is unsuccessful. Husband contends he did not use the matter of visitation as a defense to his support obligation, as in *Moffat,* because here the Kern County Superior Court merely enforced a preexisting custody order established by a sister state.[8]

---

[8]*Creed* v. *Schultz* (1983) 148 Cal.App.3d 733 [196 Cal.Rptr. 252] on its face seems to support his position. In *Creed,* husband and wife obtained a divorce decree in Ohio, giving custody of the children to wife with reasonable visitation rights for husband, including custody for specified periods. Wife moved to Texas and prevented further visitation. In Texas, wife's petition under RURESA was forwarded to the district attorney of San Francisco, California, where husband lived. Husband responded that wife repeatedly had denied him visitation rights ordered by the Ohio court.

In *Creed,* the husband—respondent in the RURESA proceeding—filed a concurrent civil action to establish the foreign divorce decree, to modify custody and child support, and to suspend payments until the wife complied with the visitation order of the Ohio court. The trial court found it lacked jurisdiction to determine custody under the Uniform Child Custody Jurisdiction Act, but ruled that wife entered a general appearance in the civil matter by serving husband with a deposition notice. Both cases were tried simultaneously and the court entered orders in each, decreasing the amount of child support payable to wife and making payment conditional upon wife's cooperation with visitation.

The reviewing court rejected the wife's contention that, under section 1694, it was error to condition child support payments upon visitation and evidently interpreted the second sentence in section 1694: "If the action is based on a support order issued by another court, . . . the duty of support, [shall be] subject only to any defenses or modification available to a defendant in the proceeding to enforce a foreign support judgment," as an affirmation of the rule of *Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 472-474 [283 P.2d 19]. (*Creed, supra,* 148 Cal.App.3d at pp. 741-742.) The *Worthley* court held the modifiable support orders of sister states would be given effect, even though not entitled to full faith and credit, as a matter of comity resulting in enforcement of the judgment according to the law of the court where the judgment originated. The *Worthley* court stated that: "Although the question of retroactive modification has been seldom litigated, the United States Supreme Court has expressed its approval of the proposition that actions to enforce retroactively modifiable decrees should be tried in a forum that has *personal jurisdiction over both parties,* and that in the trial of such actions the defendant must be afforded an opportunity to set up any mitigating defenses that would be available to him if the suit were brought in the state where the alimony or support decree was originally rendered." (44 Cal.2d at p. 471, italics added.) The *Worthley* case was decided before the Revised Act was adopted in California and the final sentence of section 1694 was added: "the determination of a duty of support . . . is unaffected by any interference by another obligee with rights of custody or visitation granted by a court."

In the *McDowell* case, the court remarked that this concluding sentence of section 1694, which explicitly excluded consideration of custody or visitation in a RURESA proceeding, was the result of a legislative response to decisions in line with *Clark* v. *Clark* (1966) 246 Cal.App.2d 619 [54 Cal.Rptr. 875] which limited the scope of inquiry in a RURESA proceeding to the duty of support. The *McDowell* court stated: "The subject of inquiry in a proceeding under the act is limited. As this court said in *Clark* . . ., '[t]he single issue to be resolved in this action brought under the "Uniform Reciprocal Enforcement of Support

However, it is clear that both the California Legislature and Supreme Court distinguish proceedings to establish or modify custody orders under the Uniform Child Custody Act and the determination and enforcement of child support under RURESA.

Civil Code section 5151 states that a custody determination "does not include a decision relating to child support or any other monetary obligation of any person." The Legislature also promulgated specific statutory grounds for the exercise of jurisdiction in child custody cases,[9] which in the instant case make it clear the trial court was without power to decide any matter relating to child custody because of the absence of the underlying statutory basis for the exercise of jurisdiction. Moreover, according to the California Supreme Court, a RURESA proceeding is not the proper forum "for litigating disputes over interference with custody and visitation rights." (*Moffat* v. *Moffat, supra,* 27 Cal.3d 645, 651-652.)

Husband's third argument that the trial court had "equitable jurisdiction to specify the terms of reasonable visitation as ordered in the dissolution decree" is equally without merit. ■ A trial court cannot exercise its equitable powers if it does not have subject matter jurisdiction or jurisdiction over the parties in the case. (Civ. Code, § 5152; see generally, 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, §§ 5, 36, pp. 531, 561.)[10]

---

Act" is the question of entitlement of dependents to support by one legally liable to support them.'" (*McDowell, supra,* 54 Cal.App.3d at p. 963.) The *Creed* court totally ignored the Supreme Court's holding in the *Moffat* case. (*Moffat* v. *Moffat, supra,* 27 Cal.3d 645.)

The validity of the *Creed* court's modification order in the RURESA proceeding, with its condition of visitation, hinged on a finding that the trial court had jurisdiction to decide a matter of visitation. Jurisdiction over matters involving child custody and visitation are expressly limited by statute in California by Civil Code section 5152. (*McDowell* v. *Orsini, supra,* 54 Cal.App.3d 951, 962-963; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, §§ 25-29, pp. 4559-4561.) The *Creed* court sidestepped the jurisdictional issue, and attempted to justify the trial court's visitation ruling based on Civil Code section 5150, subdivision (g), which provides that one of the purposes of the Uniform Child Custody Jurisdiction Act is to "[f]acilitate the *enforcement* of custody decrees of other states." (*Creed, supra,* 148 Cal.App.3d 733, 742; italics added.) This policy, pertinent to the Uniform Child Custody Jurisdiction Act, is not applicable in a RURESA proceeding where only the financial interests of the child are at stake.

[9]These provisions were not discussed in the *Creed* case. (*Creed* v. *Schultz, supra,* 148 Cal.App.3d 733.)

Unlike the present case, in the *Creed* matter, the two cases were being heard at the same time, and the parties were before the court either personally or by retained counsel; when the issues were presented, the trial court decided them; the appellate court affirmed the trial judge indicating a belief that RURESA was something more than an enforcement statute. The Supreme Court has indicated otherwise. (See *Moffat* v. *Moffat, supra,* 27 Cal.3d 645.)

[10]Even if the trial court in the instant case had subject matter jurisdiction and jurisdiction over the parties, the Florida order specifying "reasonable visitation" cannot be construed as one fixing specific visitation rights. (*Ernst* v. *Ernst* (1963) 214 Cal.App.2d 174, 178 [29 Cal.Rptr. 478].)

## Tax Deduction

■ Wife also contends the trial court had no jurisdiction in the RURESA proceeding to grant a tax deduction for the children based on child support payments. We agree.

In Adams & Sevitch, California Family Law Practice (5th ed. 1984) Tax, sections J.111-J.123 (hereafter Adams & Sevitch), the dependency exemption for tax purposes is discussed at length. The text notes that "Congress did not provide a mechanism to allow the state courts to award the exemption to a *custodial* parent." (*Id.*, at § J.120, p. J-33, italics added.) However, the parent with custody for the greater part of the year gets the exemption, with custody determined by the terms of the most recent decree of dissolution or written agreement. (*Id.*, at § J.115, p. J-32.)[11] Under exceptions to the rule, if the noncustodial parent is not awarded the dependency exemption by the court "but he or she actually pays a minimum of $1,200 per year per child and the custodial parent cannot 'clearly establish' that he or she provided more support than did the non-custodial parent" the noncustodial parent can take the exemption. (*Id.*, at § J.119, pp. J-32-33.) Secondly, if the noncustodial parent has been awarded the deduction by the court and spends $600, the deduction can be taken. (*Id.*, at § J.118.) Finally, the authors recommend that where there is joint custody, the parties should state specifically the party who is to take the exemption and to alternate it on a yearly basis and have greater custody time coincide with the agreement (*id.*, at § J.116).

It is obvious there are many variables and facts to be determined before any court has the proper information to award the tax deduction to a parent. Again, the RURESA hearing framed for its single purpose of enforcing a support obligation does not lend itself to this kind of litigation. The prosecuting attorney may not be a specialist in marital tax matters and may be unfamiliar with the importance of child care credits (§ 44A of the Int.Rev. Code), and head of household credits (§ 2(b) of the Int.Rev. Code), which are not related to the dependency exemption (Adams & Sevitch, *op. cit. supra*, at § J.112), or the deduction of medical expenses which is tied to the exemption (*id.*, at § J.111). These are issues with sophisticated tax consequences, extremely important to parents, and such matters should be litigated in the proper forum, not in a RURESA proceeding. Imposing this burden on court and prosecuting counsel would impair the efficiency of the Act, and discourage petitioners; obviously, such a complication was not

---

[11]This of course entails further involvement by the court with matters affecting custody and visitation which a court sitting in a RURESA proceeding has no jurisdiction to entertain. (§ 1694; Civ. Code, § 5151; *McDowell* v. *Orsini, supra*, 54 Cal.App.3d 951, 961-963.)

contemplated by the Legislature in enacting this support enforcement statute.

We reverse and remand for a hearing pursuant to the discussion in this opinion.

Franson, Acting P. J., and Hamlin, J., concurred.