Filed 6/14/16  J.M. v. L.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| J.M., | |
| Plaintiff and Respondent, | E061742 |
| v. | (Super.Ct.No. TED006074) |
| L.H., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bradley O. Snell, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

L.H., in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

On July 15, 2015, defendant and appellant L.H. (Mother) was granted sole legal and physical custody of the daughter (Daughter) she shares with plaintiff and respondent J.M. (Father).  Mother contends the family court violated her rights of due process on (1) August 1, 2014, because the court was biased against Mother and because the court did not provide Mother sufficient time to present her evidence; and

1

(2) March 20, 2015, when the family court denied Mother's request for an evidentiary hearing. We affirm the judgments.

## FACTUAL AND PROCEDURAL HISTORY

A.    AUGUST 1, 2014

On March 28, 2014, the family court held a trial on Mother's request to modify child custody. The trial began at approximately 9:30 a.m. and continued until 4:20 p.m. on that day. Mother called four witnesses who testified. The court calendared the second day of trial for August 1, so Daughter could be present and be questioned.

On April 25, the family court held a hearing concerning modifying the August 1 trial date. The court scheduled Daughter's interview for July 29, but kept the August 1 date on calendar. The time estimate for August 1 was three hours.

On July 29, the second day of trial commenced at 1:55 p.m. Father, who had been testifying when trial adjourned on March 28, resumed his testimony. The Child Custody Recommendation Counselor, who interviewed Daughter, also testified. The trial adjourned at 4:19 p.m.

On August 1, the third day of trial commenced at 9:21 a.m. Mother testified. Father was recalled and again testified. The family court denied Mother's request to modify child custody because the court found there was not a change of circumstances. In regard to visitation, the court explained it did not "have time right now to truly work over the significant changes to the current order," but agreed that modifying the visitation order to provide greater flexibility "makes sense." The court set the visitation issue for a review hearing on October 6.

2

B.    MARCH 20, 2015

On March 20, 2015, the family court held a hearing on two issues.  First, the court addressed child support arrears.  Father was sworn-in as a witness and provided testimony about the arrears.  The family court considered an audit by the Department of Child Support Services, which included an arrears breakdown, and marked it as Exhibit 1.

Mother had two volumes of exhibits that "involve[d] transcripts and . . . much of the history of this case."  Mother explained that the arrears were problematic because she should not have lost custody of Daughter.  Mother asserted she only lost custody of Daughter because she was falsely accused of abusing Daughter.  Mother argued, "I lost custody because they said that I abused her, that she was—it's all here in the transcripts. Nobody has ever given me my day in court."  The court responded, "You've had plenty of days in court, and you've exhausted your appeals."  Mother had previously been designated a vexatious litigant.  Mother said that, in 2007, "[i]t took [her] 13 months to get back into court" after Daughter was removed.

The family court responded, "You've been fighting the system for years.  And I know you feel like you've been victimized.  And I know you don't want to accept that the decisions that were made back then were, in the eyes of the court, the right decisions.  You might find discrepancies that you feel like prove what you're trying to say.  But the reality is, sitting here today, on March 20th, 2015, everything that's happened before was done the right way.  All right?  I can't go back and consider it differently, so I'm not going to."

3

Mother said to the court, "But the rulings are not right." Mother continued, "I've lost everything because I was accused of domestic violence. Why can't I address that?" The family court responded, "I guess you can address it in the proper forum. And you might want to vent—I mean, I don't know how I can help, ma'am. But this isn't that forum."

As to the issue of arrears and Mother being unable to access the court to adjust the child support, the family court looked at the history of the case. The court explained Mother had raised the issue of child support in 2009, but surmised that possibly because she failed to file an Income and Expense Declaration, the matter was taken off calendar. Mother tried to file a motion to adjust the child support on August 2, 2010, but was prevented from doing so due to being a vexatious litigant. The court explained, "The challenge I have is I don't know what your income was back on August 2nd of 2010, because I didn't get the Income and Expense Declaration." Mother explained that she filed a tax return in 2010 but didn't have any income.

Mother's child support had been set at $1,300 per month. In November 2014, the family court modified the child support to $350 per month. Father offered for Mother's child support to be $350 for the 96 months she failed to pay support; $350 multiplied by 96 months is $33,600, plus interest. Father explained he simply wanted the matter resolved and did not want to return to court for a hearing involving tax returns and bank statements.

Mother responded that she and Father, in 2009, had agreed Mother would pay for Daughter's transportation in lieu of child support. Father resides in Arizona, and

Mother resides in California. The court found there was no written agreement, so an agreement for Mother to pay for transportation in lieu of child support did not exist.

The family court modified the child support to $350 going back to July 1, 2009. The court found $43,812 would have been owed during that period. Mother had made a payment of $1,230.60, and there were credits from Aflac and a tax offset for the amounts of $1,205, $115.34, and $102. The family court calculated Mother's principal arrearages at $42,364. The court calculated interest at 10 percent per annum, as agreed to by the parties, which totaled $4,236. The court set the arrears at $46,600.

Second, the court addressed the allegation that Father was denying Mother visitation. Father explained Mother was supposed to have Daughter the second weekend of every month unless there were school functions or other activities that weekend. Father asserted Mother was not willing to change weekends in order to accommodate Daughter's school functions or other activities—that Mother always wanted the second weekend of the month regardless of Daughter's schedule. Father suggested Mother come to Arizona and see Daughter participate in the various activities. Father explained the activities were things such as a school dance and a friend's birthday party.

Mother said Daughter was spending time with Daughter's boyfriend—not at school functions or other activities. Mother said she wanted Daughter to visit the second weekend of every month, unless there was a school function.

The court ordered Daughter to visit Mother one weekend per month, and it would be the second weekend of the month, unless there were a school event or other activity

5

Daughter wanted to attend, in which case a different weekend of the month would be selected.

Mother asked what form she needed to complete in order to raise the issue of fraud on the court. Mother said, "[Y]ou said there is a different form [*sic*] to bring up all this stuff that I say is wrong[.] What is the form[?]" The court said it did not understand what form Mother was discussing. Mother responded, "Because you said there was no fraud on the court because of what it is. So what form do I have to raise to—" The court replied, "Forum, not form. Forum, meaning—I don't know. Maybe there's a group out there of people who feel like they've been violated in court. The forum—this is what we've just been discussing . . . ."

C.     JULY 15, 2015[1]

On July 15, 2015, the family court heard Father's motion to relinquish his parental rights. The court allowed Father to relinquish his rights and granted Mother sole legal and physical custody of Daughter. The court awarded Father visitation with Daughter at Daughter's discretion.

**DISCUSSION**

A.     CONTENTION

Mother contends the family court violated her rights of due process on (1) August 1, 2014, because the court was biased against Mother and because the time

_____

[1] This court takes judicial notice of one of the July 15, 2015, minute orders filed in the superior court case. The minute order of which we take judicial notice has as the hearing "Ex-Parte Hearing re: Mod Ch.Cust/Temp Ords/Minor to be heard Granted filed by [L.H.] represented by pro/per." (All caps. omitted.)

6

estimated for trial (three hours) was the only amount of time the court gave for presenting evidence that day; and (2) March 20, 2015, when the trial court denied Mother's request for an evidentiary hearing.

In Mother's Appellant's Opening Brief, she "prays for a fair hearing in proving the falsity of this case." Mother explains that she is "asking to remand March 20, 2015 evidentiary hearing to bring in all the facts of the falsity." (*Sic*.)

B.      MARCH 20, 2015

Mother writes in her Appellant's Opening Brief, in regard to the March 20 hearing, that the trial court "denied mother's due process rights [again], violated her due process by denying her a trial after an all day trial was scheduled, denying mother the opportunity to complete or even offer her presentation of evidence and/or offer rebuttal evidence to show the falsity of this case, and it's fundamentally unfairness when the transcripts and medical reports' show the evidence of, opposing counsel . . . and minor's counsel . . . lied about material facts." (*Sic*.) Mother cites to (1) the first page of this court's prior tentative opinion, which concerned an order from 2012; and (2) the first page of another of this court's prior tentative opinions, which concerned an order from 2012.

It appears Mother is not taking issue with the trial court's rulings on arrears and visitation, which were the topics of the March 20 hearing. Rather, Mother is faulting the trial court for not also holding an evidentiary hearing on the issue of fraud. Due process requires Father be notified of the scope and nature of the hearing. (See *In re Marriage of Ryall* (1984) 154 Cal.App.3d 743, 750; see also *In re Michael D.* (1981)

7

116 Cal.App.3d 237, 245.) The March 20, 2015, hearing concerned child support arrears and visitation. Father filed an order to show cause and affidavit for contempt related to Mother's arrears. Mother filed a request for an order directing the family court to enforce its visitation orders. Because the noticed subject matter of the hearing was arrears and visitation, we cannot fault the family court for not holding a hearing on the issue of fraud—fraud was not within the scope of the hearing that day. Therefore, the family court was correct in not addressing it.

To the extent Mother wanted the family court to overrule prior orders of the family court and prior opinions of this court, the family court does not have that authority. (*Payne v. City of Perris* (1993) 12 Cal.App.4th 1738, 1742 ["'one trial court judge may not reconsider and overrule a ruling of another judge'"]; *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 456 [a court of inferior jurisdiction must follow the decisions of the court of higher jurisdiction].) So, again, we cannot fault the family court for not taking evidence on the issue of fraud. In sum, we conclude the family court did not err.

C.     AUGUST 1, 2014

Mother contends the family court was biased against her and did not provide her sufficient time to present evidence. At the August 1 hearing, the family court denied Mother's request to modify the custody order, and set Mother's request to modify the visitation order for review in October 2014.

If Mother is correct that the family court was biased against her, then the remedy would be to reverse the ruling and conduct a new hearing on the issue of modifying

8

child custody (Code Civ. Proc., § 657, subd. (1); *Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 1009).  If Mother is correct that the family court denied her a sufficient opportunity to present her evidence, then the remedy would again be to reverse the ruling and conduct a new hearing on the issue of modifying child custody. (*In re Sara D.* (2001) 87 Cal.App.4th 661, 673; *In re Matthew P.* (1999) 71 Cal.App.4th 841, 844.)

On July 15, 2015, the family court granted Mother sole legal and physical custody of Daughter.  Thus, there is no relief that this court can provide to Mother— Mother has already obtained the relief she was seeking, which was custody of Daughter. Accordingly, the August 1, 2014, issue is moot.  (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315 [issue is moot when no effective relief can be provided].)

In Mother's Appellant's Opening Brief, she writes, "This process has caused extreme irreparable financial loss, harm and hardship to mother and her children."  To the extent Mother is seeking monetary damages for the alleged judicial bias or due process issues, this appeal is not the proper procedural vehicle for such relief.  As stated *ante*, the remedy, if bias or a due process violation existed, would be a new hearing. However, a new hearing would be unnecessary in this case because Mother has already been granted sole legal and physical custody of Daughter.

Mother asserts the issue is not moot because it is an issue of public importance. (*People v. Harris* (1993) 14 Cal.App.4th 984, 989 [a moot issue may be reviewed if the issue is of continuing public importance].)  Mother does not explain why this is an issue of public importance, and Mother fails to explain in what way the family court was

biased against her.  Additionally, Mother does not reconcile the court's alleged bias with the court granting Mother sole legal and physical custody of Daughter.  We note it was the same commissioner who conducted the August 1, 2014, hearing; the March 20, 2015, hearing; and the July 15, 2015, hearing; so the same commissioner who conducted the August 1 hearing granted Mother sole custody on July 15.  Due to the lack of information and explanation relating to how this is an issue of public importance, we find Mother's "public importance" argument to be unpersuasive.

## DISPOSITION

The judgments are affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER _____
J.


We concur:


RAMIREZ _____
P. J.


SLOUGH _____
J.