[No. A047278. First Dist., Div. Four. Oct. 24, 1990.]

In re the Marriage of LINDA and ALLEN ARON.
LINDA ARON SCHMITT, Appellant, v.
ALLEN JEROME ARON, Respondent.

**COUNSEL**

Patricia Berkowitz for Appellant.

Mary Catherine Farley for Respondent.

## OPINION

ANDERSON, P. J.—This appeal from an order reducing child support raises related jurisdictional questions concerning whether the superior court could (1) modify a foreign child support order where the obligee sought enforcement in California under the RURESA[1] registration procedures and (2) exercise personal jurisdiction over the obligee in the modification proceeding on the basis of her enforcement action. We conclude there were no jurisdictional impediments and affirm.

### I. BACKGROUND

The facts are not disputed. At all relevant times appellant Linda Aron Schmitt lived in Texas and respondent Allen Jerome Aron lived in Marin County, California. Schmitt and Aron divorced in Texas in 1984. The Dallas County District Court awarded Schmitt custody of the couple's son and ordered Aron to pay $800/month in child support, later reducing the obligation to $550/month.

Schmitt registered the Texas support order in Marin County on August 19, 1988. The following February she filed in the Marin County Superior Court (1) an application for issuance of writ of execution and (2) a declaration under penalty of perjury concerning the amount of accumulated arrears and interest due as of July 1988. The court issued the writ for the requested amount and apparently thereafter Schmitt proceeded to attach Aron's wages.

Following receipt of a wage attachment order in June 1989, Aron moved, in the Marin County Superior Court, to modify support and visitation and for an order discharging arrears based on a claim of exemption. Schmitt's attorney made a special appearance on her behalf to contest jurisdiction. At the hearing the court found it had jurisdiction to modify the Texas support order under RURESA, that Schmitt had "appeared" in the case by filing the registration documents and the declaration of interest, and ordered support reduced to $181 per month.

### II. DISCUSSION

#### A. *Subject Matter Jurisdiction*

■ Schmitt takes the position that the court did not have jurisdiction to modify the Texas child support order. She argues that in keeping with

---

[1] Revised Uniform Reciprocal Enforcement of Support Act of 1968. California's version of the uniform act is found at Code of Civil Procedure section 1650 et seq.

All statutory references are to the Code of Civil Procedure unless otherwise specified.

section 1699[2] when an obligee proceeds under the streamlined registration procedures (§§ 1697-1699) instead of by complaint (see generally §§ 1673-1696), the registering court is only empowered to enforce, but not modify, the foreign order. In particular, Schmitt maintains that under subdivision (c) of section 1699, the court could only consider matters available as "normal" defenses in an action to enforce a support judgment.

As we explain, the "normal defenses" to enforcement include modification. We conclude that the plain terms of section 1699, subdivision (a), which themselves invite reference to state law principles concerning enforcement of child support duties, empower California courts to entertain an obligor's modification motion once the foreign order is registered here. ■ Subdivision (c), governing the hearing "to enforce the registered order," is ambiguous. Construing that provision as we must with its companion clauses, we further hold that the hearing is for confirmation purposes only and does not constrain the court from later acting on a modification request.

By way of background we first note that the purpose of the registration procedure is to provide a more efficient method of enforcing foreign support orders. (*Gingold* v. *Gingold* (1984) 161 Cal.App.3d 1177, 1180 [208 Cal.Rptr. 123].) Under this procedure, an obligee can register a foreign order here by transmitting to the court clerk three certified copies of the order, a verified statement of facts, and a copy of the reciprocal law of the state rendering the order. (§ 1698.3, subd. (a).) The clerk must file these documents in the registry of foreign support orders; this filing constitutes registration. (*Ibid.*) The clerk also dockets the case, notifies the prosecuting attorney,[3] and mails notice of registration and a copy of the registered order

---

[2] Section 1699 states in relevant part: "(a) Upon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner . . . . [¶] (b) The obligor has 20 days after the mailing or other service of notice of the registration in which to petition the court to vacate the registration or for other relief. If the obligor does not so petition the registered order is confirmed. [¶] (c) *At the hearing to enforce the registered order the obligor may present only matters which would be available to the obligor as defenses in an action to enforce a support judgment.* If the obligor shows the court that an appeal from the order is pending or will be taken or that a stay of execution has been granted the court shall stay enforcement of the order until the appeal is concluded, the time for appeal has expired, or the order is vacated, upon satisfactory proof that the obligor has furnished security for payment of the support ordered as required by the rendering state. If the obligor shows to the court any ground upon which enforcement of a support order of this state may be stayed the court shall stay enforcement of the order for an appropriate period if the obligor furnishes the same security for payment of the support ordered that is required for a support order of this state." (Italics added.)

[3] By statute the district attorney is required to represent the obligee in registration proceedings. (§ 1698.2) However, under section 1655.5, an obligee instead can elect to retain private counsel in any RURESA proceeding.

to the obligor. (§ 1698.3, subd. (b).) The obligor has 20 days to petition to vacate registration or for other relief. The order is confirmed if the obligor does not so petition. (§ 1699, subd. (b).) But it is only the order itself, not the statement of arrears which is confirmed by operation of subdivision (b) and, thus, the obligor can later contest arrears without running afoul of the 20-day period. (*In re Marriage of Chapman* (1988) 205 Cal.App.3d 253, 259 [252 Cal.Rptr. 359].) Finally, section 1699, subdivision (c), delineates the scope of matters the obligor may raise at "the hearing to enforce the registered order."

Section 1699, subdivision (a), describes the effect of registration. It establishes a broad equivalency between support judgments of sister states and those issued by courts of this state. We are to treat foreign orders "in the same manner" as domestic support orders because they have "the same effect" as a domestic order. In the context of an intrastate, bicounty registration proceeding, the reviewing court in *In re Marriage of Straeck* (1984) 156 Cal.App.3d 617 [203 Cal.Rptr. 69] relied on section 1699, subdivision (a), to defeat the obligor's[4] argument that the court of the registering county did not have power to modify the order and could only enforce it. It pointed out that in California, orders for child support are modifiable as a matter of law upon a showing of changed circumstances. (*Id.*, at p. 622, citing Civ. Code, § 4700.) Further, the power to enforce necessarily includes the power to modify a support order. (*Ibid.*, citing *Worthley* v. *Worthley* (1955) 44 Cal.2d 465, 474 [283 P.2d 19].)

The Supreme Court in *Worthley* considered whether our courts could enforce a prospectively and retroactively modifiable sister state support decree. It ruled that they could, also holding that in proceedings under the uniform act in effect at the time, our courts "must afford the defendant an opportunity to litigate the issue of modification . . . . [¶] In an action to enforce a . . . support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered." (*Worthley* v. *Worthley, supra*, 44 Cal.2d at pp. 472, 474.)

The court in *Straeck* noted that *Worthley* predated the amendments which added the simplified registration procedures located at sections 1697-1699.4. Nonetheless it found *Worthley* persuasive, concluding it would be inconsistent to hold that by enacting the new registration procedures, the Legislature meant to foreclose modification of the registered order. (*In re*

---

[4] In contrast to the present case, in *Straeck* it was the obligee who asked for and received increased support. This distinction does not alter our analysis. It goes without saying it would be fundamentally unfair to let the obligee, but not the obligor, pursue modification of a registered support order.

*Marriage of Straeck, supra,* 156 Cal.App.3d at pp. 622-623.) We agree. Whether the obligee is proceeding under the complaint or the registration procedures, the action is still an action to enforce a prospectively modifiable decree. Subdivision (a) of section 1699 tells us that the court must treat the registered order like a California support order and, thus, it must on proper motion listen to the obligor's mitigating defenses, including pleas of changed circumstances justifying modification of future installments. In many cases the obligor's failure to pay is due to an inability to pay and modification is then the only realistic approach to obtaining future compliance. Facilitating collection of arrears and prospectively modifying future payments are but dual aspects of the court's function in activating a parent's support duty.

Turning now to section 1699, subdivision (c), the reference to a "hearing to enforce" the registered order is confusing in the context of the registration procedures themselves. The scheme contemplates only one hearing, namely, a preconfirmation hearing, after docketing the case, upon an obligor's timely petition to vacate registration or for other relief. The effect of failing to petition within the allotted 20-day period is confirmation of the registered order. Thus, what logically and primarily is open for adversarial dispute *prior to confirmation* is the original or continuing validity of the foreign order itself. At such a hearing the obligor could seek to cancel registration because the judgment had been vacated or discharged, there were jurisdictional or due process defects rendering the judgment void, the judgment was not yet final, etc. (See Rest.2d Conf. of Laws, §§ 103-121 [comprising Topic 4, defenses to recognition and enforcement of foreign judgment of ch. 5 (Judgments)].) After the lapse of 20 days, any lingering concerns about the validity of the foreign judgment necessarily would be waived because at that point the judgment is "confirmed" and transformed into a viable domestic order. Absent an effort to vacate the registration or seek "other relief" prior to confirmation, under normal circumstances the prosecuting attorney would proceed ex parte to enforce the order by, e.g., obtaining a writ of execution, levying on personal property, attaching wages, etc. This is just what happened here. Under these circumstances there would be no "hearing to enforce" the support judgment.

Do subdivisions (b) and (c) of section 1699, read together, mean that after confirmation an obligor cannot seek modification? No. (Accord *Bjugan* v. *Bjugan* (Wyo. 1985) 710 P.2d 213, 217; *Monson* v. *Monson* (1978) 85 Wis.2d 794 [271 N.W.2d 137, 141].) At that point, as in this case, the parties are outside the preconfirmation hearing process. That brings us full circle back to section 1699, subdivision (a), which equates the registered foreign order with a California support order, modifiable prospectively at any time in light of changed circumstances. Just because an obligee selects

the registration procedure as the preferred enforcement mechanism does not prevent a registering court from later modifying a modifiable, confirmed order.

The obligor can also petition for modification before confirmation under the "other relief" clause of section 1699, subdivision (b). Contrary to Schmitt's assertion, the scope of the preconfirmation hearing does not preclude a request for modification. Section 1699, subdivision (c) specifies as acceptable defenses those which are available in an action "to enforce a support judgment."[5] Under the rationale of *Worthley* and *Straeck*, modification is a mitigating defense to enforcement and, thus, would be permitted within the scope of this provision. Moreover, as a general principle the Restatement suggests there could be due process problems if a sister state court enforced a judgment without allowing the defendant to litigate the modification question. (Rest.2d Conf. of Laws (1989 pocket pt.) § 109, pp. 112-113.) Subdivision (c) does not fall into this potential constitutional pitfall because modification is a defense which an obligor can raise at the preconfirmation hearing.

Schmitt also suggests that the language in the Texas District Court's order that it, and no other court, "has continuing, exclusive jurisdiction" of the cause makes the order nonmodifiable, at least by any other court. This is a general recital, establishing the court's jurisdiction to act on the motion to modify the prior order, and does not foreclose another court from asserting jurisdiction over support issues at a later date. Nothing in the Texas support order or the record indicates any legal restraint on subsequent modification. In fact, the Texas court had already modified the original order.

Moreover, just because a court includes a jurisdictional recital in its order does not make the recited statement law. Courts have jurisdiction only to the extent provided by law. One court cannot wrest jurisdiction from another court simply by so saying. Indeed, the very purpose of RURESA, to which Texas subscribes, is to provide uniform principles and procedures

---

[5] This quoted language is unique to California. The official Uniform Act uses the term "a foreign money judgment" in place of the quoted language. (9B West's U.Laws Ann. (1987) U.Reciprocal Enforcement of Support (1968 rev. act) § 40, subd. (c).) The difference is not significant to our analysis because whether we are talking about a domestic or foreign support judgment, modification is a defense to enforcement.

A Texas appeals court construing its registration provisions and in particular the clause permitting the obligor to assert "any defense available to a defendant in an action on a foreign judgment" reached an opposite result. (*O'Halloran* v. *O'Halloran* (Tex.Civ.App. 1979) 580 S.W.2d 870, 872-873.) It concluded the *only* defenses which the obligor could interpose were those relating to the validity of the original decree, and under this construction concluded the Texas act did not permit modification of the registered foreign decree in the context of a registration proceeding. (*Id.*, at p. 873.)

extending to sister state courts the ability to enforce duties of support. (§ 1652; Tex. Fam. Code Ann., § 21.01 (Vernon).)

We finally point out that a support order issued by a California court pursuant to RURESA will not nullify a preexisting out-of-state order unless the court specifically so provides. (§ 1689.)[6] Here the court explicitly exercised its power to modify by ruling that it modified the Texas support order commencing August 1, 1989.

### B. *Personal Jurisdiction*

■ Schmitt also argues that the Marin County Superior Court did not have personal jurisdiction over her in the modification motion and, thus, could not decrease support. She ignores her own initiating actions in that court.

Had Aron petitioned for modification within the 20-day preconfirmation period, there would be no question of the court's jurisdiction over Schmitt. She was the plaintiff, and had submitted to the court's jurisdiction with respect to the registration proceeding. (*Mikulski* v. *Mikulski* (1969) 2 Cal.App.3d 1047, 1050-1051 [83 Cal.Rptr. 15].) Does it make a difference that Aron later sought modification in response to Schmitt's specific enforcement measures? We think not.

A California court can exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or the United States." (§ 410.10.) ■ The only federal limitation on a California court's assertion of long-arm jurisdiction is whether the party has "minimum contacts" with the state so that prosecuting the suit locally " 'does not offend "traditional notions of fair play and substantial justice." ' " (*Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 92 [56 L.Ed.2d 132, 141, 98 S.Ct. 1690], quoting *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].) Application of this minimum contacts standard requires that there be some act by which the nonresident "purposefully avails" himself or herself of the privilege of conducting activities within the forum state. (*Kulko* v. *California Superior Court, supra,* 436 U.S. at pp. 93-94 [56 L.Ed.2d at pp. 142-143].) Further, the quality and nature of the defendant's contacts with the forum state must on balance be such that it is reasonable and fair to hale him or her before the

---

[6] Section 1689 reads in part: "A support order made by a court of this state pursuant to this title does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar provision of law, regardless of priority of issuance, *unless otherwise specifically provided by the court . . . .*" (Italics added.)

foreign court. The fairness question necessitates balancing the burden or inconvenience to defendant against the state's interest in resolving the dispute. (*Id.*, at pp. 97-101 [56 L.Ed.2d at pp. 144-147].)

With respect to the plaintiff, jurisdiction is conferred by consent and generally extends beyond the plaintiff's particular cause of action to encompass any cross-complaint of the defendant as well. (*United States of Mexico v. Rask* (1931) 118 Cal.App. 21, 49 [4 P.2d 981] [Plaintiff "impliedly consented to the rendition of an affirmative judgment against it within the issues presented by its pleadings and affecting the subject matter of its action"]; see also 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 116, pp. 491-492.)

■ The uniform act has its own jurisdictional brakes which limit a party's exposure to counterclaims. Section 1690 states: "Participation in any proceeding under this title does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding." This statute has been interpreted to preclude counterclaims "based *merely* on the theory that the plaintiff, by initiating the procedure . . . has submitted herself to the jurisdiction of the court of the responding state for other purposes." (*Thibadeau* v. *Thibadeau* (1974) 133 Ga.App. 154 [210 S.E.2d 340, 343], italics added; *Ibach* v. *Ibach* (1979) 123 Ariz. 507 [600 P.2d 1370, 1373].) Thus, when a party brings an enforcement action under the uniform act, the defendant cannot then initiate divorce proceedings (*Mehrstein* v. *Mehrstein* (1966) 245 Cal.App.2d 646, 649 [54 Cal.Rptr. 65]) or raise issues concerning child custody (*McDowell* v. *Orsini* (1976) 54 Cal.App.3d 951, 963 [127 Cal.Rptr. 285]), visitation (*In re Marriage of Ryall* (1984) 154 Cal.App.3d 743, 752-754 [201 Cal.Rptr. 504]) or tax deductions (*Id.*, at pp. 755-756). This is because the single issue which a court can resolve under the act is the question of a dependent's right to support by one legally liable therefor. (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 651-652 [165 Cal.Rptr. 877, 612 P.2d 967]; *In re Marriage of Ryall, supra*, 154 Cal.App.3d at p. 747.)

Section 1690 does not, however, prohibit a court from deciding whether the obligee is entitled to receive support and if so, how much. (*Ibach* v. *Ibach, supra*, 600 P.2d at p. 1373.) The "how much" question of course goes to the modification request.

By bringing the registration action in California, Schmitt placed the issue of enforcement of support before the court and personally submitted to its jurisdiction for that cause. (See *Mikulski* v. *Mikulski, supra*, 2 Cal.App.3d at pp. 1050-1051.) Aron's request for downward modification was not an ancillary counterclaim; it was a defense to the RURESA enforcement proceeding and as such was part and parcel of it. Claims pertaining to

enforcement of arrears and modification of future installments are intimately intertwined, both bearing directly on the duty of support.

We conclude that by voluntarily initiating enforcement in our courts, Schmitt consented to be here for all purposes relating to the RURESA action, including modification. She chose California as a convenient forum to enforce her support order. The inconvenience of also having to respond to Aron's modification efforts is not sufficient to defeat personal jurisdiction. The opposite result—i.e., a determination that out-of-state parents proceeding under RURESA can use local courts for the limited purpose of establishing and collecting arrears but stand firm in contesting jurisdiction when confronted with changed circumstances—is inefficient; nor is it dictated by notions of fairness. When the modification motion is brought in response to a registration/enforcement action precipitated by the nonresident parent, it makes more sense, and on balance is fair to both parties, to resolve both matters in the registering court. Support is support, whether retroactive or prospective, and one would reasonably expect to air and resolve all support claims in a single forum.

The judgment is affirmed.

Poché, J., and Perley, J., concurred.