**James E. BURKE, Sr., Appellant–Petitioner,**

v.

**Sandra J. BURKE, Appellee–Respondent.**

**No. 45A05–9207–CV–235.**

Court of Appeals of Indiana,
Fifth District.

July 21, 1993.

Bradley W. Skolnik, Freihofer Minton Keeler & McClamrock, Indianapolis, John M. Kopack, Kopack & Gikas, Merrillville, for appellant-petitioner.

Mark A. Bates, Steve H. Tokarski, Schererville, for appellee-respondent.

SHARPNACK, Chief Judge.

James E. Burke, Sr., ("Father") appeals from the judgment of the trial court that denied Father's petition to terminate and abate support and refused to recognize an order of the Circuit Court of Sagamon County, Illinois ("Illinois Court"), that had modified prior support orders of the trial court. We reverse and remand for further proceedings.

Father raises one issue for our review which we separate and restate as:

1. Did the Illinois Court's order modify the prior support orders of the trial court in this case pursuant to the Revised Uni-

form Reciprocal Enforcement of Support Act ("RURESA")?

2. Did the trial court err by denying full faith and credit to the Illinois court's modification of the prior support orders of the trial court?

3. Was the trial court precluded from prospectively imposing a support obligation upon Father where the Illinois Court's order specified that Father's duty of support would terminate upon the youngest child reaching eighteen years of age and where the youngest child had turned eighteen prior to the instigation of the present proceedings?

The parties stipulated to the following facts, which are dispositive of this appeal. On June 24, 1976, the Lake Superior Court No. 4 (Indiana Court) dissolved the parties' marriage. The dissolution decree awarded Sandra J. Cook ("Mother") custody of the parties' four minor children: James, Denise, Kelly and Karrin. In addition, the decree ordered Father to pay support in the amount of $700 per month.

Shortly after entry of the decree, Father lost his job and moved to Illinois to accept substantially less lucrative employment. The following is a summary of relevant court proceedings involving Father's duty of support.

On January 21, 1981, following a hearing, the Indiana Court reduced support to $173 "bi-monthly" [1] and ordered Father to pay an additional $32.40 bi-monthly to reduce his arrearage, which the parties stipulated as being $16,000.[2] Two years later, in April, 1982, the Indiana Court, pursuant to Mother's petition, found Father in con-

tempt. In addition, the court found that Father owed an arrearage of $20,281.05.

In October, 1982, Mother filed a petition in the Illinois Court to register a foreign judgment as well as a petition to show cause.[3] Mother sought to register the Indiana decree. Father responded with a petition to reduce support and an objection to registration of the Indiana decree.

On November 16, 1983, the Illinois Court held a hearing on Mother's petition to show cause and Father's petition to reduce support. The following day, the court issued its order in which it denied Mother's petition to show cause and ordered Father to pay $250 per month for support of Kelly and Karrin, to be reduced by one-half upon the older child reaching the age of eighteen and to abate in full upon the younger child turning eighteen. The court specifically found that "there has been a substantial change in Respondent's circumstances sufficient to warrant a modification in his present child support obligation." (Supplemental Record, document b, p. 2).

Father subsequently moved back to Lake County. Kelly turned eighteen on April 12, 1987, and Karrin turned eighteen on May 31, 1989. On June 14, 1989, Father filed with the Indiana Court a verified petition to terminate and abate support in the Indiana Court. Mother moved to dismiss and filed a verified petition for citation and modification.

Following a consolidated hearing on all three motions on July 12, 1991, the Indiana Court entered an order containing the following relevant provisions:

"The Court finds that [Mother] did not transfer jurisdiction over the subject

---

1. The parties treat this term as synonymous with "semimonthly." *See Webster's Encyclopedic Unabridged Dictionary* 148 (1989) ("1. occurring every two months. 2. (loosely) occurring twice a month; semimonthly."). Both the trial court and the Illinois Court apparently gave the term the same construction as the parties. *See* (Record, p. 88) (where the court determines that over a seven year period Father missed 168 payments under "bi-monthly" order); (Supplemental Record, document b, p. 2) (refers to the order in question as providing for $346.66 per month). In light of these facts, as well as the fact that the order itself does not appear in the

record, we treat the order as requiring Father to pay support twice each month.

2. For purposes of this opinion, when we refer to the "Indiana decree," we refer both to the original decree and the January, 1981 modification.

3. Mother earlier had filed an RURESA petition in the Illinois court pursuant to which that court had order Father to pay support in the amount of $200 per month. Mother's registration petition was under a separate cause number from the earlier RURESA proceeding.

matter of this action to the [Illinois Court]. [Mother] merely applied the provisions of the Reciprocal Support Act.... The previous Orders of this court were merely registered in the State of Illinois for enforcement purposes only since Burke was a resident of the State of Illinois at that time.

This court still maintains subject matter jurisdiction.

This Court will recognize and credit Burke for Support payments made in Illinois on this Court's Orders. The two Orders still in force and effect are the Court's entries of January 7, 1981 and July 12, 1982. Any modification thereof by any other court is void and not recognized by this Court."

(Record, pp. 87–88). The court also found that Father owed an arrearage of $48,-500.49, which it computed by adding the $20,281.05 accumulated prior to July 12, 1982, and an amount computed at $173.33 "bi-monthly" between that date and July 14, 1989.

■ Father argues that the trial court was required to give full faith and credit to the Illinois order under Article 4 § 1 of the United States Constitution. Full faith and credit requires the courts of each state to give preclusive effect to final judgments of sister jurisdictions if the court rendering such judgments had both subject matter jurisdiction and jurisdiction over the parties. *Williams v. North Carolina* (1945), 325 U.S. 226, 229, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577, *reh'g denied* 325 U.S. 895, 65 S.Ct. 1560, 89 L.Ed. 2006; *Kniffen v. Courtney* (1971), 148 Ind.App. 358, 363, 266 N.E.2d 72, 75.

■ However, portions of a judgment which are not final fall under the doctrine of comity, which, unlike full faith and credit, is not of constitutional dimension. *County of Ventura, State of California v. Neice* (1982), Ind.App., 434 N.E.2d 907, 910. The doctrine of comity "represents a willingness to grant a privilege, not as a matter of right, but out of deference and good will. Its primary value is to promote uniformity of decision by discouraging repeated litigation of the same issue." *Id.*

(quoting, *State of Florida ex rel. O'Malley v. Department of Insurance of the State of Indiana* (1973), 155 Ind.App. 168, 176–177, 291 N.E.2d 907, 909). Under the doctrine of comity, Indiana courts are bound to help enforce the laws of sister states unless enforcement would result in a violation of Indiana law or injury to local citizens. *Abney v. Abney* (1978), 176 Ind.App. 22, 26–27, 374 N.E.2d 264, 268, *cert. denied* 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34.

■ As will be made clearer below, the concepts of full faith and credit and comity are both relevant to this case. However, their application to this case is circumscribed by a uniform act, the Uniform Reciprocal Enforcement of Support Act, which all fifty states have enacted in some form. Indiana has enacted the original version of the act (URESA), I.C. § 31–2–1 *et. seq.* and Illinois has enacted a revised version (RURESA) 750 Illinois Compiled Statutes 20/1 *et. seq.* While the statutes are similar, there are some significant differences between them which come into play in our decision. It is important to keep in mind that the common goal of full faith and credit and the doctrine of comity is to give judgments the same effect as would be given to them by a court in their state of issuance. Therefore, we are governed by RURESA where that statute differs from URESA, because the Illinois court acted under the former in entering its order.

RURESA, like its predecessor, URESA, was designed "to improve and extend by reciprocal legislation the enforcement of duties of support...." I.C. § 31–2–1–1; 750 ILCS 20/1. The remedies provided in both versions "are in addition to and not in substitution for any other remedies." I.C. § 31–2–1–3; 750 ILCS 20/3. Both versions likewise provide that a responding state may issue a support order for an amount different than that contained in the order sought to be enforced. I.C. § 31–2–1–23; *Banton v. Mathers* (1974), 159 Ind.App. 634, 642, 309 N.E.2d 167, 172; 750 ILCS 20/24.

RURESA and URESA differ, however, with regard to the *effect* of a support order

in the responding state which departs from the foreign support order sought to be enforced. IND. CODE § 31-2-1-29 (hereinafter, "antisupersession clause") provides:

> "No order of support issued by a court of this state when acting as a responding state shall supersede any other order of support but amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both."

I.C. § 31-2-1-29.

■■■ Courts have read the antisupersession clause in conjunction with the purpose of URESA—to provide an additional and separate means of enforcement—to reach the conclusion that orders by responding courts under URESA for amounts different than those established by the orders sought to be enforced do not modify those prior orders. *Banton v. Mathers* 159 Ind.App. at 642–644, 309 N.E.2d at 171–173; *but see Sullivan v. Sullivan* (1981), 98 Ill.App.3d 928, 933–934, 54 Ill.Dec. 207, 211, 424 N.E.2d 957, 961 (reading antisupersession clause to refer only to responding court orders which seek to retroactively modify past due support). As explained by *Banton*, the orders are made in two separate actions; therefore while the responding court's order may be enforceable in the responding state, it does not affect the enforceability of the order entered by the initiating court in either the initiating state or any other state. *Banton*, 159 Ind.App. at 642–644, 309 N.E.2d at 171–173; *see also Coons v. Wilder* (1981), 93 Ill.App.3d 127, 48 Ill.Dec. 512, 516–517, 416 N.E.2d 785, 789–790; *Osborne v. Goeke* (1991), Mo., 806 S.W.2d 670, 672.[4] Thus, arrearages accumulate under the original order if the obligor fails to pay the full amount specified in that order, al-

though any amount paid under the reduced order in the responding state must be credited to the obligor under the original order. *Banton*, 159 Ind.App. at 642, 309 N.E.2d at 172–173.

However, section 31 of RUERSA differs from section 29 of URESA as follows:

> "A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to· a substantially similar act or any other law, regardless of priority of issuance, *unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to any support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State."

750 ILCS 20/31 (emphasis added).

The RURESA provision presents us with an interesting question of statutory interpretation. As noted above, the majority of courts interpreting URESA have concluded that responding court orders pursuant to that act have no effect on the original foreign court order, in part because of the general purpose of the act: to provide an *additional* remedy. RURESA has the same stated purpose as URESA, but it also includes a version of the antisupersession clause which apparently provides for modification, at least if one reads the term "nullify" to include the concept of prospective modification. This presents an apparent conflict within RURESA.

■■■ Courts have come to different conclusions about this apparent conflict and about the effect of section 31 of RURESA.[5]

---

4. *See generally* Annotation, *Construction and effect of provision of Uniform Reciprocal Enforcement of Support Act that no support order shall supersede or nullify any other order* 31 A.L.R.4th 357, 3[a] (1984).

5. *Compare Schmitt v. Aron* (1990), 224 Cal. App.3d 1086, 274 Cal.Rptr. 357, 362; *Ball v. Musiak* (1989), Ky.App., 775 S.W.2d 524, 526; *Campbell v. Jenne* (1977), 172 Mont. 219, 563

P.2d 574, 577 *with Banton*, 159 Ind.App. at 641–643, 309 N.E.2d at 171–172. *Banton* involved the presentment in Indiana of an Oklahoma RURESA order for support in an amount less than that ordered by the Indiana trial court which had entered the original support decree. The *Banton* court did not distinguish between Oklahoma's RURESA provision and Indiana's antisupersession clause in concluding that the

However, Illinois courts have read RURESA as providing the responding court with the authority to modify foreign support orders if they specify the intent to do so. *Oetjen v. Oetjen* (1981), 92 Ill.App.3d 699, 703, 48 Ill.Dec. 247, 250–251, 416 N.E.2d 278, 281–282; *see also In re Marriage of Head* (1989), 187 Ill.App.3d 159, 162, 135 Ill.Dec. 110, 112, 543 N.E.2d 345, 347 (court, interpreting Kansas law, held that Kansas RURESA order did not modify Illinois order because it lacked a clear statement of intent to do so); *but see In re Marriage of Casey* (1990), 198 Ill.App.3d 619, 620–621, 144 Ill.Dec. 804, 805–806, 556 N.E.2d 271, 272–273 (court quoted RURESA omitting "unless specifically provided" language and held that a support order entered under RURESA does not supersede any previous support order). Thus, the Illinois Court had the authority under Illinois law to modify the Indiana decree.

■ The question remains, however, whether the Illinois order specifically provides for modification of the Indiana decree. We hold that it does. In the findings accompanying its order, the Illinois court stated that "there has been a substantial change in Respondent's circumstances sufficient to warrant a modification in [Father's] present child support obligation." (Supplemental Record, document b, p. 2). It is clear that the court was referring to modification of the Indiana decree and not to the prior Illinois RURESA order because

the court specifically found that the prior Illinois order had modified the Indiana divorce decree, and the Indiana court had in turn modified the prior Illinois order.[6]

■ In sum, the Illinois court had both subject matter jurisdiction under RURESA to modify the Indiana decrees and personal jurisdiction over the parties.[7] Illinois courts would recognize the Illinois order as having modified the Indiana decree. Lastly, the Illinois order was a final judgment to the extent that arrearages had accumulated under it. 750 ILCS 20/24.[8] The principles of full faith and credit thus required the trial court to enforce the Illinois order to the exclusion of the prior Indiana decree, and it was not free to modify the amount of arrears accrued under the Illinois order. The trial court therefore erred by calculating Father's arrearage based upon the Indiana support order without regard to its modification by the Illinois court.

It does not necessarily follow, however, that the Illinois order prevented the trial court from prospectively modifying Father's support obligation. On one hand, support orders generally are not final judgments to the extent that they may be prospectively modified. On the other hand, however, the terms of the Illinois order, combined with the fact that the youngest child had turned eighteen prior to the commencement of these proceedings, lend an air of apparent finality to the order.

"uniform act" provided only a separate remedy for enforcement and did not allow responding courts to modify a prior support order.

6. Our resolution of this issue relieves us of the need to address Father's contention that Mother's decision to proceed with RURESA's registration remedy (I.C. § 31–2–1–35–37; 750 ILCS 20/35–40), as opposed to the civil enforcement remedy, provided the Illinois Court with the power to modify the Indiana decree even if 750 ILCS 20/31 would have otherwise prevented it from doing so.

7. Father resided in Illinois and Mother both registered the Indiana decree in Illinois and actively litigated the question of modification.

8. That section provides, in relevant part: "Any new or existing support order entered by a court ... of this or any other State shall be deemed to be a series of judgments against

the person obligated to pay support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall:
(1) have the full force, effect and attributes of any other judgment of such State, including the ability to be enforced;
(2) be entitled as a judgment to full faith and credit in this and any other State; and
(3) not be subject to retroactive modification by this or any other State; except that modification is permitted with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given in accordance with law...."
750 ILCS 20/24.

The case of *Elkind v. Byck* (1968), 68 Cal.2d 453, 67 Cal.Rptr. 404, 439 P.2d 316 provides guidance for our resolution of this issue. In *Elkind*, the parties were married in New York and divorced in Georgia in 1957. The divorce decree incorporated the parties' agreement which provided for a lump sum payment in lieu of both alimony and child support. In 1965, the mother initiated a URESA proceeding in New York, which the court forwarded to Father's state of residence, California. Mother alleged in her petition that, due to a change in circumstances, she required $750 per month in child support.

Chief Justice Traynor, writing for the court, noted that, under Georgia law at the time, a lump sum payment for child support could not be revised. 68 Cal.2d at 455, 67 Cal.Rptr. at 405, 439 P.2d 316. However, Justice Traynor also recognized that Georgia's URESA statute provided that duties of support applicable under the act were those imposed or imposable under the laws of the state where the Obligor resided during the period for which support was sought. 68 Cal.2d at 456, 67 Cal.Rptr. at 405, 439 P.2d 316. Justice Traynor reasoned that, although a Georgia court would have denied the mother's petition for modification if the father had resided in Georgia and she had brought the URESA action there, "[c]learly ... the Georgia decree does not purport to deprive the courts of the obligor's residence of the power to impose a duty of support in accordance with their law." *Id.*

■ Illinois' RURESA statute contains the same operative provision as that contained in the Georgia URESA statute. 750 ILCS 20/7. Therefore, although the Illinois order, when read in light of Illinois law, purported to modify the prior Indiana support order, it did not purport to govern Father's duty of support for all time and in all states. The order contemplated that courts of states in which the obligor might reside in the future could impose a duty of support on the obligor with reference to their own laws. As a result, the order was prospective only, even to the extent that it provided for termination of Father's duty of support upon the youngest child turning eighteen.

■ Because the Illinois order was not a final judgment with respect to Father's future duty of support, full faith and credit is inapplicable. Similarly, the doctrine of comity does not require the trial court to give any more effect to the Illinois order than would courts of Illinois. When Father moved from Illinois, nothing in the Illinois order prevented the Indiana court from imposing a duty of support on Father following Indiana law. We therefore must determine whether, regardless of comity concerns, Indiana law vests the trial court with the power to modify Father's support duty under these circumstances.

■ In Indiana, the dissolution court has continuing jurisdiction and power to order modifications of support during the minority of a child. *Brokaw v. Brokaw* (1980), Ind.App., 398 N.E.2d 1385, 1388. A parent's duty to support a minor child upon dissolution of a marriage does not terminate until the child reaches the age of twenty-one unless the child becomes emancipated prior to that date. *Id.;* I.C. § 31–1–11.5–12(d). In *Brokaw,* the court held that a prior court order which incorporated the parties' agreement that support would terminate upon their child reaching the age of eighteen did not prevent the court from modifying support pursuant to the mother's petition filed after the child's eighteenth birthday. *Brokaw,* 398 N.E.2d at 1387–1388.

■ While *Brokaw* dealt mainly with the question of whether parties could contractually agree to terminate support as of a child's eighteenth birthday as opposed to whether a court order to that effect is valid, the implication of the case is that neither is valid in light of the fact that the parties' agreement had been incorporated into a court order. We therefore hold that the trial court had the authority to modify Father's duty of support prospectively, and it could make the modification effective from the date of Mother's filing of her petition for citation and modification. *Holman v. Holman* (1985), Ind.App. 472

N.E.2d 1279, 1287; *In re Marriage of Wiley* (1983), Ind.App., 444 N.E.2d 315, 319.

■ We cannot review the propriety of the trial court's modification, however, because the court did not establish an amount of prospective support.[9] We recognize that the court's postponement of that decision deprives the judgment of finality. Normally, such an interlocutory order would not be appealable unless it falls within one of the categories listed in App.R. 4(A)(1)–(5) or has been certified in accordance with App.R. 4(A)(6). Nonetheless, where, as here, we discover after briefing that a deficiency exists, we may review those adjudicated issues that are severable without prejudice to the parties. App.R. 4(E); *INB National Bank v. 1st Source Bank* (1991), Ind.App., 567 N.E.2d 1200, 1201; *Wiley*, 444 N.E.2d at 319, n. 5. The issue of the preclusive effect of the Illinois order is severable without prejudice to the parties. If and when the trial court modifies Father's support obligation, this opinion does not prevent Father from attacking it on any grounds aside from asserting the preclusive effect of the Illinois judgment.

For the reasons stated above, we reverse and remand for proceedings consistent with this opinion.

### REVERSED AND REMANDED

CONOVER, J., concurs.

BARTEAU, J., concurs in result with opinion.

BARTEAU, Judge, concurring in result.

I do not agree with the majority's reasoning that the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), adopted by Illinois, grants Illinois the authority to modify the Indiana court's child support order. However, I concur in result because I believe the act of registering the Indiana judgment in Illinois vested the Illinois court with that authority.

I disagree with the majority's reasoning in two respects: First, I do not agree that the language in the Illinois order that "there has been a substantial change in Respondent's circumstances sufficient to warrant a modification in [Father's] present child support obligation" is sufficient to constitute a "specific" nullification of the Indiana order. Second, I do not agree that Illinois has definitively interpreted RURESA as providing the responding court with the authority to modify foreign support orders if they specify the intent to do so.

Section 31 of RURESA, as adopted by Illinois in 750 ILCS 20/31, provides that a support order made by an Illinois court does not nullify a support order made by a court of another state "unless otherwise specifically provided by the court." The Illinois court's finding that "there has been a substantial change in Respondent's circumstances sufficient to warrant a modification in [Father's] present child support obligation" is language which will be found in every Illinois and Indiana case granting a modification of child support, because such a finding is required before a modification can be granted. 750 ILCS 5/510; Indiana Code 31–1–11.5–17. I am simply unable to read into this standard, and in fact almost required, language any indication that the Illinois court "specifically" nullified the Indiana order. Absent a "specific" nullification, the Illinois order had no effect on the existing Indiana support order. In fact, Illinois has held that the

---

9. The order stated, in relevant part:

"The Court directs the parties' attorneys to exchange either tax returns for 1989 and 1990 or W–2 statements for those years within ten (10) days of the date of this Order. The attorneys shall then prepare worksheets under the Indiana Child Support Guidelines to modify the amount of support that Burke shall pay Cook retroactive to July 14, 1988.

\* \* \* \* \* \*

The amount of support arrearage will be recomputed by the Court when an amount is established commencing July 14, 1988 which arrearage shall then be added to the existing arrearage and then will be reduced to judgment against Burke in favor of Cook...." (Record, p. 88–89).

language that a child support payment shall be *"in lieu of* the present order for child support" was not specific enough to indicate an intent to nullify the existing support order. *Oetjen v. Oetjen* (1981), 92 Ill.App.3d 699, 48 Ill.Dec. 247, 251, 416 N.E.2d 278, 282 (emphasis added). If "in lieu of" is insufficient, then silence on the issue surely is also.

I also disagree with the blanket statement that Illinois courts "have read RURESA as providing the responding court with the authority to modify foreign support orders if they specify the intent to do so." While the two Illinois appellate court cases cited in support do so hold, *In re Marriage of Head* (1989), 187 Ill.App.3d 159, 135 Ill. Dec. 110, 543 N.E.2d 345 and *Oetjen,* 48 Ill.Dec. 247, 416 N.E.2d 278, another district of the Illinois appellate court held to the contrary in *In re Marriage of Casey* (1990), 198 Ill.App.3d 619, 144 Ill.Dec. 804, 556 N.E.2d 271. The court stated: "Under URESA, a responding court may enter a decree for an amount of prospective child support that differs from the amount previously ordered by the initiating court. However, a support order issued pursuant to URESA does not supersede any previous order of support.... Though the respondent is entitled to a credit against the amount of arrearage due under the divorce judgment for the support he paid under the URESA judgment, his original obligations under the divorce judgment remain and any arrearage continues accumulating." *Id.* 144 Ill.Dec. at 805–806, 556 N.E.2d at 272–273 (citation omitted).

As noted by the majority, most courts interpreting URESA have concluded that orders of the responding court have no effect on the original judgment because the purpose of URESA is to provide an *additional* remedy. The authority is split on whether, given the fact RURESA has the same purpose, the same should hold true in spite of the language indicating that a specific order of a responding court will nullify an existing order. I am not persuaded by a 2–1 split between districts of the Illinois appellate court that we can safely say that Illinois interprets RURESA to permit the responding court to modify the child support order of the initiating court. To the contrary, I find instructive the opinion of the Illinois Supreme Court in *In re Marriage of Gifford* (1988), 122 Ill.2d 34, 118 Ill.Dec. 452, 521 N.E.2d 929. The statute at issue in that case was Michigan's URESA provision, which did not include the "unless otherwise specifically provided by the court" language. But, in holding that an Illinois order was not nullified, the court concluded that allowing modification by a responding state defeats the stated purpose of providing an additional remedy. The Court held that because the remedies were designed to be in addition to and not in substitution for any other remedies, "if a URESA support order constituted a binding modification of the underlying decree then the legislature's laudable objective of providing an additional remedy would be thwarted." *Id.* 118 Ill.Dec. at 454, 521 N.E.2d at 931. Based on the foregoing, I am unconvinced that under Illinois law a responding state has the authority to modify a child support order of the initiating state.

However, I concur in result with the majority's opinion because I believe that by registering the Indiana judgment in Illinois, Wife conferred authority upon the Illinois court to make a binding prospective modification of the Indiana judgment.

Indiana's URESA statute provides: "The support order as confirmed shall have the same effect and may be enforced as if originally entered in the court of this state." I.C. 31–2–1–37. Illinois's RURESA statute provides: "Upon registration the registered foreign support order shall be treated in the same manner as a support order entered by a court of this State. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner." 750 ILCS 20/40. Because support orders are subject to modification in Indiana and Illinois, if the registered judgment is treated as if originally entered in the state enforcing it, it is subject to modification. *See*

*Commonwealth of Kentucky v. Musiak* (1989), Ky.App., 775 S.W.2d 524; *Bjugan v. Bjugan* (1985), Wyo., 710 P.2d 213; *Banton v. Mathers* (1974), 159 Ind.App. 634, 309 N.E.2d 167, n. 5. By choosing to proceed with the additional remedy of registration, Wife conferred the Illinois court with the power to modify the support obligation.

I concur in full with the majority's resolution of Issue III.