942 P.2d 472

**Karen K. ZIEGELBAUER,
nka Lawrence–Juedes,
Petitioner–Appellee,**

v.

**James W. ZIEGELBAUER,
Respondent–Appellant.**

**No. 1 CA–CV 96–0444.**

Court of Appeals of Arizona,
Division 1, Department A.

June 24, 1997.

As Amended June 26, 1997.

Redesignated as Opinion July 15, 1997.

Wilson, McConnell & Associates, P.C. by Beverly J. McConnell, Phoenix, for Petitioner–Appellee.

DeeAn Gillespie & Associates, P.C. by DeeAn Gillespie, Phoenix, for Respondent–Appellant.

## OPINION

EHRLICH, Judge.

The trial court granted relief to Karen Lawrence–Juedes fka Karen Ziegelbauer from an order declaring $12,861.61 as the total child-support arrearage that James W. Ziegelbauer owed Lawrence–Juedes, his former wife. The court held that an earlier order made an incorrect determination that an Illinois order entered under Illinois's version of the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA") had modified the child-support provisions of Lawrence–Juedes and Ziegelbauer's Arizona decree of dissolution. Therefore, the court held that, as a matter of Illinois law, the RURESA order had left the Arizona decree intact. It recalculated Ziegelbauer's child-support arrearage at $44,970.22 and entered judgment for that amount.

Ziegelbauer appealed. We now must decide whether the trial court correctly interpreted the Illinois RURESA support order.

### FACTS AND PROCEDURAL HISTORY

Lawrence-Juedes petitioned for dissolution of her marriage in Maricopa County, Arizona, in February 1982.[1] The parties' dissolution decree, entered June 15, 1982, ordered Ziegelbauer to pay Lawrence–Juedes $200 monthly support for each of their two minor children. Ziegelbauer moved to Illinois thereafter.

In February 1983, Lawrence–Juedes obtained the Maricopa County Attorney's assistance in enforcing child-support payments from Ziegelbauer. Pursuant to ARIZ.REV. STAT.ANN. ("A.R.S.") section 25–563 (Supp. 1996),[2] Arizona's version of RURESA section 14, the county attorney filed a complaint for support on Lawrence–Juedes's behalf in Maricopa County. The complaint alleged a total arrearage of $5060 for the period March 15, 1982, through January 31, 1983. It sought $200 per month for child support and an additional $100 per month toward arrearage until paid.

In accordance with A.R.S. § 25–563, the complaint and supporting documents were certified and forwarded to Illinois. They were filed in Boone County, Illinois, on April 7, 1983, pursuant to former Ill.Rev.Stat. ¶ 1218, currently 750 ILL. COMP. STAT. ANN. 20/18 (West 1993). Ziegelbauer appeared in the Illinois Circuit Court and stipulated with an assistant Illinois state's attorney:

1. That as of 3–15–83, the respondent is in arrears for child support of $5,060.00.

2. That the respondent has agreed to pay $100.00 per week regular child support and $25.00 per week on the arrearage ... total of $125.00 per week commencing June 15, 1983.

In 1985, Illinois authorities petitioned the Illinois Circuit Court for a contempt order against Ziegelbauer. After a hearing, the court ordered "[t]hat the respondent's child support shall be reduced from $100.00 per week to $51.65 per week commencing July 12, 1985" and "[t]hat the arrearage is struck at $6488.30 as of 7–12–85."

Lawrence-Juedes transferred the children to Ziegelbauer's custody on January 11, 1986. The Illinois court abated Ziegelbauer's "current child support" as of that date. On April

---

1. The statement of facts in Ziegelbauer's opening brief fails to support its assertions with citations to the record as required by ARIZ. R. CIV.APP. P. 13(a)(4). We therefore disregard it, see Flood Control District of Maricopa County v. Conlin, 148 Ariz. 66, 68, 712 P.2d 979, 981 (App.1985), and summarize the facts from the record and the answering brief.

2. Arizona's Revised Uniform Reciprocal Enforcement of Support Act, formerly A.R.S. §§ 12–1651 through 12–1691, has been transferred and renumbered as A.R.S. §§ 25–551 through 25–591. 1996 Ariz.Sess.Laws Ch. 192, § 11, eff. July 20, 1996. For convenience, we cite the provisions of the Act as currently numbered.

1, 1986, the children returned to Lawrence–Juedes. Effective three days later, the Illinois court reinstated "current child support" at $51.65 per week with $10 per week against the arrearage.

On August 25, 1988, the Illinois assistant state's attorney and Ziegelbauer stipulated that Ziegelbauer was in arrears in the amount of $6999.30 as of July 18, 1988, and agreed to pay "current child support" of $55 per week and $20 per week against arrearage beginning August 26, 1988. A similar stipulated order was entered in the Illinois court on June 13, 1989, which acknowledged child-support arrearage in the amount of $8368.55 as of June 12, 1989; Ziegelbauer was to pay $52 per week current child support and $23 per week against arrearage beginning June 16, 1989.

In September 1990, Lawrence–Juedes filed a "motion to determine arrearage and for entry of judgment" in the Maricopa County action. It incorporated an affidavit calculating Ziegelbauer's net child-support arrearage and accruing interest under the dissolution decree at $25,670.51 as of September 15, 1990, including $422.34 in unreimbursed medical expenses. A copy of the motion was served on Ziegelbauer in Wisconsin on November 22, 1990. The trial court entered judgment in the requested amount on February 13, 1991. No one appeared on Ziegelbauer's behalf and no appeal was taken.

In March 1995, Lawrence–Juedes filed an affidavit of arrearage pursuant to A.R.S. § 25–503(G) (Supp.1996) (formerly A.R.S. § 12–2453(F) (1994)). She averred that Ziegelbauer's child-support arrearage, net of payments totaling $11,394, was $41,396.43 as of January 15, 1995. On June 5, 1995, Lawrence–Juedes obtained an order of assignment directing any employer of Ziegelbauer to withhold $200 for child support and $750 against arrearage from Ziegelbauer's monthly earnings, capped at 50% of his disposable earnings.

Ziegelbauer filed a motion to amend the order of assignment. He challenged the arrearage amount of $24,999.48 which Lawrence–Juedes had alleged four years before in her uncontested motion to determine the arrearage. Ziegelbauer noted that Law-

rence–Juedes based her current arrearage calculation of $41,396.43 on that figure and asserted that the lower arrearage figure reflected in the Illinois Circuit Court's records demonstrated that his actual arrearage through June 23, 1995, was $9966.55 plus interest.

In July 1995, the trial court reduced Ziegelbauer's monthly assignment amount from $950 to $300. It also directed counsel to confer and either recalculate the arrearage or request an evidentiary hearing. Lawrence–Juedes requested a hearing and, later, filed a petition for an order to show cause for contempt.

On January 5, 1996, the court raised Ziegelbauer's monthly assignment amount from $300 to $500. At a later hearing, it raised the amount to $800 and gave counsel until March 20, 1996, to file memoranda on the effect of the Illinois court's rulings on the arrearage calculation.

Only Ziegelbauer filed a memorandum within that time. On March 26, 1996, the trial court issued an order determining that the correct arrearage amount was $12,861.61 as of January 1995. Lawrence–Juedes filed her memorandum on March 28, 1996, the date the court's order was filed, and, on April 1, 1996, moved for reconsideration. The motion was denied.

Lawrence-Juedes moved for relief from judgment on May 21, 1996. After argument, the trial court ruled that it was not required to credit the Illinois court's arrearage determination because, as a matter of law, the Illinois court had never modified Ziegelbauer's support obligation under the Arizona decree of dissolution. Ziegelbauer then appealed.

## DISCUSSION

Ziegelbauer contends that "the modifications of support made in Illinois Court are binding on Arizona Courts." He states that the parties' dissolution decree was registered in Illinois "as the Illinois Court acted in accordance with registration by not transmitting payments made by Husband to Arizona and not forwarding modified orders to Arizona." Ziegelbauer relies on *Burke v. Burke,*

617 N.E.2d 959, 962 (Ind.App.1993), for the proposition that the Illinois Circuit Court's support orders in this case "specifically provid[ed]" that the parties' Arizona dissolution decree be modified within RURESA section 31, adopted in Illinois as Ill.Rev. Stat. Ch. 40, ¶ 1231, currently 750 ILL. COMP. STAT. ANN. 20/31 (West 1993). We do not agree with Ziegelbauer's interpretation of Illinois law or his application of that law to the circumstances of this case.

■ Illinois's version of RURESA section 31 is almost identical to CALIF.FAM.CODE § 4840, which this court considered and applied in *White–Nathan v. Nathan*, 181 Ariz. 112, 888 P.2d 237 (App.1994). Section 31 provides in pertinent part:

> A support order made by a court of this State pursuant to this Act does not nullify and is not nullified by a support order made by a court of this state pursuant to any other law or by a court of any other state pursuant to a substantially similar act or any other law, regardless of priority of issuance, *unless otherwise specifically provided by the court.* [Emphasis added.]

It thus conditions the responding court's power to modify or nullify the original, underlying child-support order upon entry of an order that specifically so provides.[3] If the responding court's order does not precisely so allow, then that court has refrained from exercising the modification power that section 31 grants it. In that situation, "the RURESA support order does not nullify or supersede the original support order, and arrearages will continue to accumulate under that order." *White–Nathan*, 181 Ariz. at 116, 888 P.2d at 241; *accord Jefferson County Child Support Enforcement Unit v. Hollands*, 327 Ark. 456, 939 S.W.2d 302, 305 (1997) (absent express language of nullification, order establishing child-support obligation different from that under foreign state decree does not modify child-support provisions of foreign decree).

■ Relying on *Burke*, 617 N.E.2d 959, Ziegelbauer contends that the orders and actions of the Illinois Circuit Court amounted to "specifically providing" for modification of the support provisions of the 1982 Arizona decree. This is so, he argues, because, like the order in question in *Burke*, the Illinois court's order of July 3, 1985, "reduced" Ziegelbauer's child-support obligation. Ziegelbauer states, "The wording of the order is similar to the order in *Burke* except the word reduce is used rather than modify."

Ziegelbauer's analysis is mistaken. Initially, he does not fully acknowledge the characteristics of the RURESA order from which the *Burke* court concluded that the rendering court had specifically provided for modification of the underlying support order.

In *Burke*, the Indiana trial court's divorce decree originally imposed on the father a $700 monthly child-support obligation. After the father moved to Illinois in reduced circumstances, the Indiana court modified his child-support obligation under the decree to twice-monthly payments of $173 for support and $32.40 against arrearage. The Indiana court later found the father in contempt of its own prior support and arrearage order, and determined that the father was in arrears in excess of $20,000. Thereafter, in a RURESA action, an Illinois court further reduced the father's support obligation to $200 per month.

In Illinois again, the mother sought to register the Indiana arrearage determination as a foreign judgment and petitioned for a contempt order. The father opposed the registration and petitioned to reduce his support obligation. The Illinois court set the father's support payments at $250 per month for both children to abate by half when the older became 18 and abate entirely when the younger became 18.

After both children reached 18, the father petitioned in Indiana to terminate his support obligation altogether. The Indiana trial court declined to hold that the Illinois court's order had modified the Indiana divorce decree. On appeal, the Indiana appellate court reversed.

---

3. *Contra Beach v. Beach*, 642 N.E.2d 269, 276 (Ind.App.1994) (declining to follow *Burke* and holding instead that an Indiana URESA support order cannot modify a foreign state's support order).

Contrary to Ziegelbauer's implication, the *Burke* court did not find the responding court's reference to modifying the respondent's present child-support obligation sufficient of itself to "specifically provide" for modification of the underlying order. Referring to the Illinois order, the court stated:

> In the findings accompanying its order, the Illinois [responding] court stated that "there has been a substantial change in Respondent's circumstances sufficient to warrant a modification in [Father's] present child support obligation." ... *It is clear that the court was referring to modification of the Indiana decree and not to the prior Illinois RURESA order because the court specifically found that the prior Illinois order had modified the Indiana divorce decree, and the Indiana court had in turn modified the prior Illinois order.*

*Id.* 964 (emphasis added).

Ziegelbauer argues:

> The language in *Burke v. Burke,* "specifically providing" for modification, does not reference the Indiana order *per se,* but does state there is a modification of present child support. In the Illinois orders [in the instant case] the court specifically recognize[d] change[d] circumstances. When children [were] residing with Father for a period of time, the court abated support. When children went back to live with Mother for a period of time, the court reinstated support, and when the court initially modified support, it referenced not only an agreement of the parties, but also a review of Husband's financial circumstances.

Despite Ziegelbauer's contention, nothing comparable to the circumstances described in *Burke* appears in the Illinois Circuit Court's RURESA orders in this case. That court's initial order was based on Ziegelbauer's agreement with the $5060 arrearage alleged in Lawrence–Juedes's Arizona complaint and his agreement to pay $100 per week child support and $25 per week against arrearage. The Illinois court's next order provided "[t]hat the respondent's child support shall be reduced from $100.00 per week to $51.65 per week commencing July 12, 1985...." Its use of the word "reduce" carries no impli-

cation that the court intended to modify the original Arizona decree. The Illinois court plainly changed only the more limited support obligation that its initial RURESA order imposed. Neither that order nor any of the Illinois court's other support orders mentioned the Arizona decree of dissolution or expressed any intention to modify Ziegelbauer's support obligation under the Arizona decree. Thus, the Illinois court's orders did not "specifically provide" for modification of the Arizona dissolution decree within 750 ILL. COMP. STAT. ANN. 20/31.

Ziegelbauer also argues:

> ... The fact that the alleged responding state (Illinois) did not transmit to the initiating court any payments made by the obligor, pursuant to RURESA Section 28, indicates Illinois considers this matter its own, either by way of registration or modification, and all orders were final and would be binding on the Arizona court entitled to full faith and credit.

He cites no authority for this contention. Additionally, even assuming the correctness of the inference Ziegelbauer draws, anything that Illinois might "consider" concerning the underlying source of Ziegelbauer's support obligation is immaterial under Illinois law absent compliance with the statutorily-prescribed means by which an Illinois court may supersede or modify a foreign state's support order. 750 ILL. COMP. STAT. ANN. 20/31.

The series of arrearage amounts that the Illinois court determined is consistent with our conclusion that the court merely issued standard RURESA support orders that did not supersede the Arizona decree's support provisions. Simple arithmetic reveals that all these amounts were based on the original $5060 arrearage alleged in Lawrence–Juedes's Arizona RURESA complaint, increased by the varying Illinois support obligations and reduced by Ziegelbauer's sporadic payments in Illinois.

■ Ziegelbauer finally contends that "it can be argued the decree was registered, as the Illinois Court acted in accordance with registration by not transmitting payments made by Husband to Arizona and not forwarding modified orders to Arizona." We

again disagree. "Registration" of a foreign support order is the alternative enforcement procedure we discussed as follows in *White–Nathan:*

> ... RURESA sections 35 through 40 ... permit an obligee to register a foreign support order with the responding court. Within twenty days of service, the obligor may ask the responding court to vacate the registration. If the obligor does not do so, the registered support order is confirmed and becomes enforceable in the responding state.

181 Ariz. at 114–15, 888 P.2d at 239–40. As Lawrence–Juedes correctly points out, however, nothing contained in this record suggests that she ever registered the Arizona decree in Boone County. It reflects only that Lawrence–Juedes caused an independent support action to be initiated in her state of residence and forwarded to Ziegelbauer's state of residence for filing.

In his reply brief Ziegelbauer rejoins:

> ... Respondent has only argued that the Illinois court *treated* its modified order as if the Arizona decree had been registered. This fact is important as an indication of the Illinois court's attitude toward the orders it had issued. It treated the action and the order as its own, indicating that it intended to modify the Arizona decree and make the Illinois decree controlling between the parties. [Emphasis original.]

As said above, Ziegelbauer cites no authority for the proposition that the Illinois court's "attitude" or its failure to transmit his payments to Lawrence–Juedes's former home state of Arizona can be treated as a legally-acceptable substitute for the required "specific provision" modifying the Arizona decree. RURESA § 31. The trial court did not err in computing Ziegelbauer's child-support arrearage based on the unmodified Arizona dissolution decree.

### ATTORNEY'S FEES

 Lawrence-Juedes requests an award of attorney's fees on appeal pursuant to A.R.S. sections 12–341.01(C), 12–349 and 12–350. Ziegelbauer's appeal was insufficiently supported by the law or the record. It un-reasonably complicated Lawrence–Juedes's efforts to collect child-support arrearages. Further, the appeal could not be said to have been taken in good faith given the maintenance of Ziegelbauer's position in light of the governing law. In the exercise of our discretion, we award attorney's fees to Lawrence–Juedes upon compliance with Rule 21, ARIZ. R. CIV.APP. P.

### CONCLUSION

The judgment is affirmed.

WEISBERG and GRANT, JJ., concur.